CHARLES M. HILL, Secretary, Department of Local Affairs Development
You have requested my opinion on five questions concerning amendments or corrections to assessors' plats. You first inquire as follows:
"In the event it is determined that amendment(s) or correction(s) be made to an assessor's plat of record, may they be prepared and recorded similarly as provided by Section 236.295, Wisconsin Statutes? If not, by what specific procedure and in what form should such an amendment or correction be accomplished?"
Section 236.295, Stats., as amended by ch. 41, Laws of 1971, relates to subdivision plats and provides as follows:
"Correction instruments. (1) Correction instruments may be recorded in the office of the register of deeds in the county in which the plat is recorded and may include: *Page 26 
"(a) Affidavits to correct distances, angles, directions, bearings chords, block or lot numbers, street names or other details shown on a recorded plat; and
"(b) Ratifications of a recorded plat signed and acknowledged in accordance with s. 706.07.
"(c) Certificates of owners and mortgagees of record at time of recording.
"(2) Each affidavit in sub. (1) (a) shall be approved prior to recording by the governing body of the municipality or town in which the subdivision is located. The register of deeds shall note on the plat a reference to the page and volume in which the affidavit or instrument is recorded. The record of such affidavit or instrument, or a certified copy thereof, shall be prima facie evidence of the facts stated therein."
In my opinion, an amendment or a correction to an assessor's plat of record may not be prepared and recorded as provided by sec. 236.295, Stats.
First of all, even in the case of a subdivision plat, sec.236.295, Stats., does not authorize any change or amendment other than specific corrections of the nature described therein. The correction instruments referred to therein are intended to be substituted in the place of inaccurate information or to rectify noncompliance with a statutory standard. However, true amendments to an original subdivision plat, by way of any other modification, deletion or addition to said plat, presumably formulated for the general purpose of improving the same, can only be accomplished under the statutory provisions for vacating and altering subdivision plats, set forth in secs. 236.36 through236.445, Stats. 49 OAG 113, 114 (1960); 55 OAG 14, 18 (1966).
The purpose of ch. 236, Stats., is to regulate the division of land for the purpose of sale or of building development, while the purpose of assessors' plats, prepared pursuant to sec. 70.27, Stats., is to eliminate uncertainties and reconcile discrepancies in real estate descriptions which have arisen in the past and presently hinder various local governmental functions. Secs.236.02 (8) and 70.27 (1), Stats. This general distinction accounts for the fact that most of the provisions of ch. 236. Stats., including sec. 236.295, *Page 27 
Stats., do not apply to assessors' plats. The only provisions of ch. 236, with which assessors' plats must comply, are set forth in sec. 236.03 (2), Stats., which provides:
"This chapter does not apply to cemetery plats made under s.157.07 and assessors' plats made under s. 70.27, but such assessors' plats shall, except in counties having a population of 500,000 or more, comply with ss. 236.15 (1) (a) to (g) and 236.20
(1) and (2) (a) to (e)."
There is, in fact, no need to go outside the provisions of sec.70.27, Stats., to find the statutory authority for amending and correcting an assessor's plat. Section 70.27 (1), Stats., provides:
"AMENDMENTS. Amendments or corrections to an assessor's platmay be made at any time by the governing body by recording with the register of deeds a plat of the area affected by such amendment or correction, made and authenticated as provided by this section. It shall not be necessary to refer to any amendment of the plat, but all assessments or instruments wherein any parcel of land is described as being in an assessor's plat, shall be construed to mean the assessor's plat of lands with itsamendments or corrections as it stood on the date of making such assessment or instrument, or such plats may be identified by number." (Emphasis added)
This section clearly requires that the amendments or corrections be accomplished by the recording of a plat reather [rather] than by some other method.
The previsions [provisions] of sec. 70.27 (2), (5), (6), (7) and (8), Stats., set forth the specific procedure and form which is to be followed to amend an assessor's plat. Subsections (5), (6) and (7) set forth the manner in which the surveyor is to conduct his survey and place monuments as well as the form and procedure to be followed in certifying the plat to the governing body. Subsection (5) also provides for notice to owners of record of lands lying within the plat. Subsection (8) contains most of the specific procedures which are to be followed by the governing body subsequent to the filing of the completed plat by the surveyor
Your second question refers to the above-quoted provisions of sec. 70.27 (4), Stats., and first asks: *Page 28 
"a. What is meant by the wording `plat of the area affected?' What size sheet does it imply? How is it to be prepared, etc.?"
The words "plat of the area affected" refers to a new assessor's plat covering all of the area which is intended to be affected by the amendment or correction. The plat must be prepared in full compliance with all the provisions of sec.70.27, Stats., and all the applicable provisions of secs. 236.15
and 236.20, Stats. The latter provisions are set forth in sec.236.03 (2), Stats., above quoted. 58 OAG 198 (1969). One of these provisions, sec. 236.20 (1) (a), Stats., requires that the plat be prepared on muslin-backed white paper, 22" x 30".
The second part of your second question reads as follows:
"b. What is meant by the wording `made and authenticated as provided by this section?' Is the prepared amendment or correction plat required to be approved as similarly required for the original related assessor's plat? Are the provisions of Section 70.27 (8) required for such prepared amendment or correction plat?"
The requirement in sec. 70.27 (4), Stats., that amendments and corrections be "made and authenticated as provided in this section" means that the prepared amendment of correction plat is required to be approved in the same manner as the original related assessor's plat, including compliance with the provisions of sec. 70.27 (8), Stats. The word "authenticated" appears to have been first used in sec. 4, ch. 187, Laws of 1933, the direct predecessor of our modern assessor's plat statute. Part of this enactment added the following language to the then existing statute:
". . . Both such plat and list (designating each parcel) shall be certified to by the person making the same, approved by the council or board, acknowledged various certificates and mayor or the village clerk and president and recorded in the office of the register of deeds of the county in which said city or village is located. . . . Amendments may be made to the plat at any time by the council or board by recording with the register of deeds a plat and accompanying list of such amendment, authenticated inthe same manner as the original plat and list . . . ." (Emphasis added) *Page 29 
Under the 1933 law, as now, the original assessor's plat, as well as any amendment or correction thereto, is "authenticated" by the various certificates and verifications which the statute requires be added to the plat to attest to its accuracy and compliance with statute. Presently, these include the "sworn certificate of the surveyor" required by subsec. (7), the certificate of the head of the planning function of the Department of Local Affairs and Development that the plat complies with the applicable provisions of secs. 236.15 and236.20, Stats., and the certificate of the clerk of the governing body causing the plat to be made indicating that all provisions of sec. 70.27, Stats., have been complied with, both as required by subsec. (8), and finally the requirement of subsec. (2) that the clerk acknowledge the instrument as that which was authorized and approved by the governing body. See 38 OAG 295 (1949) for discussion of the form of acknowledgment.
Your third question asks:
"What limitations are involved concerning the amendment or correction of an assessor's plat of record? For example, many boundaries of lots within the originally recorded assessor's plat be changed by such amendment or correction?"
The first part of this question is too general to allow a meaningful response. In response to the second part of the question, however, it is my opinion that the boundaries of lots as shown within the original recorded assessor's plat may be changed by virtue of an amendment or correction adopted in compliance with sec. 70.27, Stats.
Your nest question asks:
"Is it necessary for the governing body to conduct a `public hearing' concerning proposed amendment(s) or correction(s) to an assessor's plat of record?"
In my opinion, the governing body is not required to conduct a "public hearing" concerning a proposed amendment or correction to an assessor's plat of record.
Action by the governing body ordering an assessor's plat is based on a determination that certain inaccuracies and errors exist in the real estate descriptions of a particular area which hinder various local governmental functions, such as the *Page 30 
assessment and taxation of property or the location of streets. In making this initial judgment as well as in otherwise proceeding under the statute, the governing body, as well as those acting as officers and agents thereof, is engaged in thebona fide exercise of its police power in the advancement of the general welfare. Nevertheless, since matters relating to the property rights of individual citizens are treated by sec. 70.27, Stats., I can appreciate that question might arise whether the absence of such a public hearing would render the statute vulnerable as denying the due process of law guaranteed by theFourteenth Amendment to the United States Constitution. In my opinion, however, the statute is not defective in this regard.
The relationship between the valid exercise of the police power and due process is generally stated in 16 Am. Jur. 2d,Constitutional Law, sec. 296, at pp. 578-580, as follows:
"The balance between police power and due process is more or less in a state of unstable equilibrium, changing with sociological and economic development. On the one hand, the general rule is firmly settled that the provisions of theFourteenth Amendment prohibiting any state from depriving any person of life, liberty, or property without due process of law do not operate as a limitation upon the police power of the state to pass and enforce such laws as will inure to the health, morals, and general welfare of the people. The state is not deprived of the power to enact regulations reasonable in character, and a statute or ordinance which is a valid exercise of the police power does not violate the due process clauses of the state and federal constitutions. Indeed, regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed or burdens and expenses of various types are imposed. . . .
"On the other hand, the United States Supreme Court has pointed out that the Fourteenth Amendment requires that governmental regulation shall be accomplished by methods consistent with due process, and that the due process clause is a limitation upon an improper exercise of the police power by the states in that it prevents an arbitrary or unreasonable exercise of the power through laws or regulations." *Page 31 
Our office has previously recognized that some consideration must be given to procedural due process in reference to assessors' plats. 23 OAG 11, 12 (1934). And, due process does require that, when governmental action adversely affects certain rights or privileges, notice and opportunity for hearing appropriate to the nature of the case must be afforded before such action becomes effective. Bell v. Burson (1971), 402 U.S. 535,91 S.Ct. 1586, 1591, 29 L.ed. 2d 90; Wisconsin v.Constantineau (1971), 400 U.S. 433, 91 S.Ct. 507,27 L.ed. 2d 515; Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011,25 L.ed. 2d 287; Sniadach v. Family Finance Corp. (1969), 395 U.S. 337,89 S.Ct. 1820, 23 L.ed. 2d 349.
However, it appears clear that decision to order the plat in the first instance rests solely in the hands of the governing body and that due process does not require that that decision be prefaced by a public hearing. As stated in 48 Am. Jur., SpecialOr Local Assessments, sec. 176, at pp. 713-714:
"A right to notice, protest, and hearing does not exist with respect to a determination by the legislature, municipal council, or other duly constituted authority of the creation of an improvement district or area, the size of the district or area, and what property is included therein. . . ."
Furthermore, sec. 70.27 (1), Stats., already sets forth a formula which determines the share of the expense of making the assessors' plat which will be assessed against each parcel. That subsection reads, in part, as follows:
". . . The actual and necessary costs and expenses of making assessors' plats shall be paid out of the treasury of the city, village, town or county whose governing body ordered the plat, and all or any part of such cost may be charged to the land, without inclusion of improvements, so platted in the proportion that the last assessed valuation of each parcel bears to the last assessed total valuation of all lands including in the assessor's plat, and collected as a special assessment on such land, as provided by s. 66.60." *Page 32 
Where, as here, the legislature establishes a formula for payment, there is little purpose in holding a public hearing on the matter of the apportionment of such costs, since, as indicated in 48 Am. Jur., Special Or Local Assessments, sec. 157, at pp. 697-698:
"If a special or local assessment is made in accordance with a fixed rule adopted by a legislative act, there is no right to notice or a hearing, and when the cost of an improvement is, as by law in proper cases it may be, apportioned by mere mathematical calculation, notice and hearing are not necessary. . . ."
and, as indicated in 48 Am. Jur., Special or Local Assessments, sec. 176, at p. 714:
"A right to notice, protest, and hearing does not exist with respect to a determination of the mode of apportionment of a special or local assessment, at least, where such determination is by the legislature. In the enactment of the law, property owners are represented, and while it may be usual and proper for a lawmaking body to hear arguments as to measures of taxation, pro and con, through committees or otherwise, such hearing cannot be demanded as a legal right. . . ."
Nevertheless, since the ultimate intended effect of the adoption of an assessor's plat is to reconcile discrepancies and inconsistencies in property descriptions, such a plat will undoubtedly affect many of the owners of real property lying within the plat. These owners have reason to expect that they will be assured timely and adequate notice of the proposed plat as well as an effective opportunity to present their views and obtain information in reference to the plat. Section 70.27 (5), Stats., establishes such a procedure:
". . . The owners of record of lands in the plat shall be notified by registered letter mailed to their last known address, in order that they shall have opportunity to examine the map, view the temporary monuments, and make known any disagreement with the boundaries as shown by the temporary monuments. It is the duty of the surveyor making the plat to reconcile any discrepancies that may be revealed, so that the plat as certified to the governing body is in conformity with the records of the register of deeds as nearly as is practicable. When boundary lines *Page 33 
between adjacent parcels, as evidenced on the ground, are mutually agreed to in writing by the owners of record, such lines shall be the true boundaries for all purposes thereafter, even though they may vary from the metes and bounds descriptions previous of record. . . ."
In addition, even after the surveyor and the head of the planning function of the Department of Local Affairs and Development have executed their certificates on the plat, an additional opportunity to challenge the plat in court is given interested parties by sec. 70.27 (8), Stats. This subsection provides, in part, as follows:
". . .After the plat has been so certified the clerk shall promptly publish a class 3 notice thereof, under ch. 985. The plat shall remain on file in the clerk's office for 30 days after the first publication. At any time within such 30-day period any person or public body having an interest in any lands affected by the plat may bring a suit to have such plat corrected. . . ."
The above-described procedure quite adequately protects interested property owners and fully satisfies due process requirements.
Your last question asks:
"May the governing body levy and collect a special assessment for the expense of making amendment(s) or correction(s) to an assessor's plat of record, as provided by Section 70.27 (1) and Section 66.60, Wisconsin Statutes?"
The answer to this question is "yes" Section 70.27 (1), Stats., provides, in part, as follows:
". . . The actual and necessary costs and expenses of making assessors' plats . . . may be charged to the land, . . . and collected as a special assessment on such land, as provided by s. 66.60."
As pointed out in my previous comments, the making of amendments or corrections to an assessor's plat, under sec.70.27, Stats., is an exercise of the police power which is to be accomplished for the same purposes and in the same manner as *Page 34 
the original assessor's plat. This, of course, includes the assessment of the "actual and necessary costs and expenses" of making the amendment or correction.
RWW:JCM