Samuel-J. I. SAYAH, Plaintiff,

v.

The UNITED STATES of America et al., Defendants.

No. 72-1242-AAH.

United States District Court, C. D. California.

Jan. 29, 1973.

Irwin M. Friedman, Los Angeles, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., and Carolyn M. Reynolds, Asst. U. S. Attys., for defendants.

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITHOUT PREJUDICE

HAUK, District Judge.

This case came on regularly on January 15, 1973, as a motion by the Defendants, United States of America and officers and officials of the Civil Service Commission, the Department of Health, Education and Welfare (HEW), and the Social Security Administration, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and in the alternative to dismiss under Rule 12 of the Federal Rules of Civil Procedure.

Plaintiff Samuel-J. I. Sayah was employed on August 17, 1970, as a claims representative GS–7 for the Social Security Administration at their office in Inglewood, California. This appointment was subject to completion of a one-year probationary period. On May 28, 1971, the office notified him by letter that he would be terminated during his probationary period effective June 18, 1971. The reason for this move, according to the letter, was that the plaintiff had "become a disciplinary problem in the Inglewood District Office and [you] are having a strong and adverse effect upon the morale and working environment of that office." [1]

Asserting that the Administration discriminated against him, Mr. Sayah appealed his termination in a letter to the Civil Service Commission's San Francisco Regional Office. Mr. Sayah is a Jew, who immigrated to the United States from Turkey. Moreover, he suffers a physical handicap because of an early bout with polio. All of these factors, he believes, comprise the true reasons for his termination.

The letter was received by the Commission's Regional Office on June 21, 1972. A month later, it ordered the Regional Office of the Department of Health, Education, and Welfare to conduct an investigation of plaintiff's complaint and make a report as required by Commission regulation 5 CFR Sec. 315.-806(b). [2] The order specifically directed

---

1. This letter undoubtedly constituted the "notification in writing" required by 5 C.F.R. § 315.804, when an agency proposes to terminate a probationary employee for unsatisfactory performance or conduct. T. p. 195. As a matter of fact, the entire Record is before the Court, filed by the Government and entitled, "Appeal File of the Civil Service Commission Relating to Samual J. Sayah."

2. § 315.806 **Appeal rights to the Commission.**

   (a) *Right of appeal.* An employee may appeal to the Commission in writing an agency's decision to terminate him under § 315.804 or § 315.805 only as provided in paragraphs (b) and (c) of this section. The Commission's review is confined to the issues stated in paragraphs (b) and (c) of this section.

   (b) *On discrimination.* (1) An employee may appeal under this subparagraph a termination which he alleges was based on discrimination because of race, color, religion, sex, or national origin. The Commission refers the issue of discrimination to the agency for investigation of that issue and a report thereon to the Commission.

   (2) An employee may appeal under this subparagraph a termination not required by statute which he alleges was based on political reasons or marital status or a termination which he alleges resulted from improper discrimination because of physical handicap.

   (c) *On improper procedure.* A probationer whose termination is subject to § 315.805 may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section.

the investigative body to address itself to the issues of discrimination by reason of religion, national origin and physical handicap.

Pursuant to the Commission's letter, the Regional Commissioner of Social Security appointed an investigating officer, Ms. Margaret Tang, and she spent the period from August 16 to August 19, 1971, gathering material. Her final conclusion, dated October 13, 1971, was that there was no clear evidence of discrimination against Mr. Sayah. However, she did not feel that the plaintiff's problems were due exclusively to his weakness in the area of interpersonal relations; in part Sayah suffered from inadequate and haphazard supervision.

Finally, on January 28, 1972, the Commission's Regional Office issued its decision, concluding that Mr. Sayah's termination was not due to any form of discrimination. The Plaintiff was advised of his right to appeal to the Commission's Board of Appeals and Review, and he did so by telegram on February 15, 1972. Ten days later, his representative, one Mr. Harris, asked for a hearing before the Board of Appeals and Review. On May 4, the Board affirmed the Commission's Regional Office's denial of Plaintiff's appeal. They held that there was no evidence of discrimination and furthermore, that the Commission's regulations did not provide for a hearing on appeal from a termination during probation.

Mr. Sayah claims that while he was pursuing his remedy, the Defendants tried to intimidate various witnesses. He also asserts that the Defendants have violated several other regulations, to wit: failure to give him notice in advance of intention to terminate, failure to give him the opportunity to respond to charges prior to termination, failure to be given counsel or to be given the opportunity to resign, and failure to be given access to his ninth month evaluation reports. However, he submits no affidavits or exhibits to substantiate these charges.

Mr. Sayah also says that the employees of the Inglewood Office drafted a three-page petition to Defendant Thomas Hart, Social Security Administration Regional Representative, Bureau of District Office Operations. It stated basically that the employees did not feel that Sayah had any deleterious effect on the group. The document continues ". . . We are not aware of any disciplinary problem he might have caused. We have not observed the display of any unprofessional conduct by him . . . We, his co-workers, feel that we would be first hand observers of any unusual behavior because we work so closely with him . . . ."

## JURISDICTION

Mr. Sayah has come into Federal Court under the Fifth Amendment and 5 U.S.C. Sections 702 and 706.[3] Section 702 reads:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency ac-

3. **AMENDMENT V.—**
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**§ 702. Right of review**
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392.

**§ 706. Scope of review**
To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

tion within the meaning of a relevant statute, is entitled to judicial review thereof."

Section 706 is more precise:

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\*   \*   \*   \*   \*   \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be   .   .   .

\*   \*   \*   \*   \*   \*

B) Contrary to constitutional right, power, privilege, or immunity;

\*   \*   \*   \*   \*   \*

D) without observance of procedure required by law;

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 393.

4.  At least one decision says that a court must intervene not merely in cases of procedural shortcomings, but more broadly if the court becomes aware, especially from a combination of danger signals, that

"In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." [4]

Although Section 702 on the surface provides a general ground for judicial review, its accompanying section 706 severely narrows the field. This court can set aside the findings of the Board of Appeals and Review on only six grounds [5]; of the six, only the two mentioned above are relevant here.

*Observance of Procedure*

■   Mr. Sayah was a probationary employee within the meaning of the "Title 5–315" series of the Civil Service Commission's regulations (5 C.F.R. 315.-801 *et seq.*).[6]  One effect of this status is that his rights are much more tenuous than those of his colleagues who enjoy

the agency has not really taken a "hard look" at the salient problems, and has not genuinely engaged in reasoned decision-making. Greater Boston Television Corp. v. F. C. C., 143 U.S.App.D.C. 383, 444 F. 2d 841 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701, 404 U.S. 877, 92 S.Ct. 30, 30 L.Ed.2d 125. We also note that the entire record is before the Court. See note 1, *supra.*

5.  See note 2, supra.

6.        Subpart H—Probation
§ 315.801  Probationary period;   when required.
(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probationary period when the employee:
(1) Was appointed from a register;
(2) Was reinstated under § 315.401, unless during any period of service which affords a current basis for reinstatement, the employee completed a probationary period or served with competitive status under an appointment which did not require him to serve a probationary period;
(3) Was appointed under § 315.601(a) as a former employee of the Canal Zone Merit System, unless he satisfactorily completed a 1-year probationary period under that system;
(4) Was appointed under § 315.603 (a)(2) on the basis of his former in-

permanent employment, and that includes appeal rights. If the agency wishes to terminate a probationer for unsatisfactory performance or conduct, all it need do is notify him in writing as to why he is being separated, along with the effective date of the action. The minimum information required in the notice is "the agency's conclusions as to the inadequacies of his performance or conduct." [7] The defendants have complied with the Civil Service Commission regulations; nothing appears to indicate that the agency has failed to observe its own procedure as required in Section 706(2)(D) of 5 U.S.C. On these grounds then, Mr. Sayah is barred from the Federal Courts.

Plaintiff cites the case of Toohey v. Nitze, 429 F.2d 1332 (9th Cir. 1970) for the proposition that there is no difference between a tenured employee and a probationer. However, the opinion actually states the opposite.

"Dismissal from federal employment is largely a matter of executive agency discretion. Particularly is this true during the probationary period. The scope of judicial review is narrow." *Id.*, at 1334.

■ Mr. Sayah's next contention is that his case merits consideration under the "713" series of Title 5 of the Code of Federal Regulations. This overlooks the basic fact that the Regulations in the "713" series do not apply to probationary employees but only to permanent employees who are denied "equal opportunity" or, suffer "discrimination because of race, color, religion, sex or national origin." It is the "315" series to which probationers must look for relief, as we have already demonstrated. Subpart H of that "315" series is captioned "Probation", and within that Subpart, Section 315.806(b), n. 2 *supra*, provides for appeal rights when a *probationer* claims that his grievance is due to lack of equal opportunity and discrimination because of race, color, religion, sex, or national origin.[8]

7. 5 C.F.R. Section 315.804

§ 315.804 **Termination of probationers for unsatisfactory performance or conduct.**

When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

cumbency of a position brought into the competitive service;

(5) Has had his employment converted under § 315.701 or § 315.703 from another type of employment; or

(6) Was appointed under § 315.605 as a former Peace Corps volunteer or volunteer leader.

(b) A person who is:

(1) Transferred under § 315.501; or

(2) Promoted, demoted, or reassigned; before he completed probation is required to complete the probationary period in the new position.

(c) A person who is reinstated from the Reemployment Priority List to a position in the same agency and the same commuting area does not have to serve a new probationary period, but, if separated during probation, is required to complete the probationary period in the new position.

§ 315.802 **Length of probationary period.**

(a) The probationary period required by § 315.801 is 1 year.

(b) The Commission shall publish in the Federal Personnel Manual a statement of the conditions under which prior service is counted toward completion of a probationary period.

8. Plaintiff's additional reliance on section 713.401 regarding discrimination because of his physical handicap, is also incorrect. Section 713.401(b) states:

An agency may not take an adverse action against an employee covered by part 752 of this chapter, nor effect the termination of a probationer under part 315 of this chapter . . . (3) for physical handicap with respect to any position the duties of which may be efficiently performed by a person with the physical handicap.

**1014**

Turning to the assertion by Sayah that the official reasons for his termination were incorrect, we find that he must file a written Answer to the notice of the proposed adverse action, to wit, termination.[9] All that is required of the Agency is that it consider his Answer under the same regulatory Section 315.-806(b) and then give him "notice of adverse decision." The Agency did consider his Answer and did give him notice of adverse decision (Tr. pp. 3–4). Sayah's only recourse, then, was to appeal the adverse decision under Section 315.-806(a) by claiming either 1) that it was "based on discrimination because of race, color, religion, sex or national origin" (315.806(b)(1); or 2) that it was "based on political reasons or marital status or . . . physical handicap" (315.806(b)(2); or 3) that it was "on the ground that his termination was not effected in accordance with the procedural requirements of that section [315.-805]." (315.806[c]).

It is clear in the record that Plaintiff chose to appeal under (1) and (2) of the above three grounds for alleged discrimination based on "race, religion, national origin and physical handicap." He did not appeal under the third ground because obviously the record is clear that the "procedural requirements of Section 315.085" were all met. And it is equally clear in the record that he did also receive his rights on appeal for discrimination reasons—"race, religion, national origin and physical handicap" —when the Commission not only referred the issue to the Agency (Social Security Administration—HEW) for investigation and a report to the Commission, but it also considered all of these things upon appeal (Tr. pp. 1–203, especially pp. 3–6).

*Constitutional Rights*

There is nothing in the record that would persuade us to conclude that the Plaintiff has been deprived of any Fifth Amendment right, as he asserts. Since this is a motion for summary judgment, Mr. Sayah had time to file affidavits, and yet there is no assertion that his status and circumstances were tantamount to a deprivation of either a *liberty* or a *property* interest in continued employment. Perry v. Sindermann,

We agree with the Regulation's plain meaning, but its reference to the "315" series indicates that if this type of discrimination occurs, the proper remedies are to be found in the "315" series. It is unreasonable to conclude that if a probationer is discriminated against on account of his race, or national origin, he receives "315" series treatment; while if he is slighted because of a physical handicap or marital difficulty, his remedy lies in the "713" series. Logic dictates that a probationer's options exist exclusively in the regulatory framework reserved for that type of employee, namely the "315" series.

9. § 315.805 **Termination of probationers for conditions arising before appointment.**

When an agency proposes to terminate an employee serving a probationary or trial period for reasons based in whole or in part on conditions arising before his appointment, the employee is entitled to the following:

(a) *Notice of proposed adverse action.* The employee is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action.

(b) *Employee's answer.* The employee is entitled to a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.

(c) *Notice of adverse decision.* The employee is entitled to be notified of the agency's decision at the earliest practicable date. The agency shall deliver the decision to the employee at or before the time the action will be made effective. The notice shall be in writing, inform the employee of the reasons for the action, inform the employee of his right of appeal to the appropriate office of the Commission, and inform him of the time limit within which the appeal must be submitted as provided in § 315.806(d).

408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 270, 33 L.Ed.2d 548 (1972). In order to bring a suit against the Social Security Administration under the Fifth Amendment, the Plaintiff must show either a deprivation of *liberty* or *property*.

■ We are confident that no *liberty* interest is involved here, since there is no restraint on the Plaintiff, nor is the State attaching a badge of infamy that would destroy his reputation. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Olson v. Trustees of California State University, 351 F.Supp. 430 (C.D.Cal.1972). The letter of termination written to Sayah is not tantamount to such infamy. The strongest language in it was ". . . failure to meet the standards of professional conduct expected of a claims representative trainee." (Tr. p. 60) Moreover, Mr. Hart qualified his statement by assuring Sayah that the determination ". . . reflects in no way upon your intellectual or personal integrity, but is taken solely because of the deleterious effect your apparent emotional problems have had upon whatever group you have worked with within

the Social Security Administration."[10] This is not like saying the Plaintiff is totally inept. No one has posted this letter in the halls of every employment agency in the City of Los Angeles. In short the District Office's operation hardly approaches the conduct of the Wisconsin Alcoholic Control Board in *Constantineau,* supra; and the Court finds that Mr. Sayah was not deprived of *liberty.*

■ Nor does Mr. Sayah have any *property* interest in continued employment as explained in the two Supreme Court decisions of *Roth* and *Sindermann,* supra. *Roth* holds that at the end of a trial or probationary employment period, no property interest attaches that would entitle the employee to be retained, at least within the scope of the Fourteenth Amendment.[11] Since the Sayah case concerns the Federal Government's actions, it arises under the Fifth Amendment, although the principles discussed in *Roth* are analogous.

■■ It is true that Perry v. Sindermann qualifies *Roth* by saying that where there is a reasonable expectancy of retention amounting to a quasi-con-

---

10. The record indicates that there was a factual basis for the conclusions indicated in the letter of termination. One incident recounted in the Discrimination complaint against Sayah provides as follows:

"In another instance Mr. Sayah violated the principles and practices instilled in SSA personnel to avoid personal involvement in claims filed by relatives. He prepared his father's application for Social Security and Medicare benefits at home, insisted on having it processed at Inglewood rather than by the Santa Monica Office, and was so persistent in his attempts to 'monitor and process his father's claim that the claims representative was forced to hide the file so Mr. Sayah would not have access to it. He also wanted to translate a Turkish document to be used as proof of age for his father.'

"In addition he asked the claims representative handling the case 'to destroy a document in the file which might prove

harmful to expeditious handling of the claim'."
(Tr. pp. 56–57)

11. **AMENDMENT XIV.—CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION; APPORTIONMENT OF REPRESENTATION; DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT**
Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

tract, then a *property* interest will attach. But this expectancy must be a mutually understood value, one that is objective, not subjective in the mind only of the employee. The question in the Sayah case, then, is whether the Plaintiff and the Social Security Administration shared such an attitude. Did the Administration lead Mr. Savah to believe that the probation period was only a *pro forma* status preceding regular employment? Or was he told that the period is not a mere prelude to tenure, but indeed does function as a period of "watchful waiting"? This is the second crucial point on which this litigation turns against the Plaintiff. It is clearly stated in the Regulation that a probationary employee is not promised a lasting job after one year, or even that he is guaranteed a full year's stay.[12] It unambiguously sets forth a "watchful waiting" period in which the probationer can be terminated.

Mr. Sayah originally filed his complaint *in propria persona*, but even though he now is represented by counsel, his original complaint still stands. It lacks specificity and he has not attempted to clarify it through exhibits or affidavits. In any event there is presently before the Court no genuine issue of material fact, and the moving party Defendant is entitled to judgment as a matter of law, Rule 56 F.R.Civ.P.; and taking every allegation of the complaint as true, the Defendants' motion for summary judgment must be granted.

The foregoing shall constitute findings of fact and conclusions of law per Rule 52 and let judgment be entered accordingly. The Court has further this date signed and filed the formal findings of fact, conclusions of law and separate judgment heretofore lodged by counsel for Defendants.

12. *I. e.*, 5 C.F.R. Section 315.803 states,
   § 315.803 **Agency action during probationary period (general).**
   The agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment.