**PREMIER SERVICE CORPORATION d/b/a/ Airport Limousine Service, Appellee,**

v.

**CITY OF ST. LOUIS; Vincent C. Schoemehl, Jr., individual and as Mayor of the City of St. Louis, etc.; Paul Berra, individual and as Comptroller of the City of St. Louis, etc.; Thomas Zych, individual and as President of the Board of Aldermen, etc.; James J. Wilson and Thomas Ray, individual and as City Counsel of the City of St. Louis; Leonard L. Griggs, Jr., individual and as Director of Airport of the City of St. Louis, etc.; Gabrieal Alberici, Edward Aboussie, Luther Boykin, John G. Storey, Terry Joseph and Wendell Rivers, individual and as members of the City of St. Louis Airport Commission; Robert Mall, individual, etc., Veronica Braddy, June Ryan; and Holland Industries, Appellants.**

No. 85–2342.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1986.

Decided July 24, 1986.

Rehearing and Rehearing En Banc Denied Aug. 27, 1986.

Robert H. Dierker, Julian L. Bush, William R. Werner, St. Louis, Mo., for appellants.

Charles R. Oldham, St. Louis, Mo., for appellee.

Before HEANEY, ARNOLD, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

On August 21, 1985, Premier Service Corporation (Premier) commenced this action in state court under 42 U.S.C. §§ 1981, 1983, and 1985 against the City of St. Louis, Mayor Vincent J. Schoemehl, Jr., other City officials, and the successful bidder (hereinafter collectively referred to as the City), alleging racial discrimination and denial of due process of law in the course of denying Premier renewal of its concessionaire's contract to provide limousine service to passengers at Lambert International Airport.

The City removed the action to federal court. The district court[1] granted a preliminary injunction prohibiting the City from awarding the concessionaire's contract to any other party until the Board of Estimate and Apportionment (Board) held a name-clearing hearing and provided Premier with a statement of the reasons for denial of the contract. The City appeals. We reverse.

The City had granted Premier the airport limousine concession contract during the twenty-five years preceding this dispute. As a result of a prolonged strike of Premier's drivers, Anthony Sansone, the original owner of Premier, sold the company to state senator J.B. "Jet" Banks in October 1982. Mayor Schoemehl was instrumental in this transaction. As a part of the transaction, Senator Banks acquired the existing concessionaire's contract, which ran from July 1, 1980, to June 30, 1985. Under the terms of this contract, Premier was obligated: (1) to make monthly payments to the City of 5% of the gross receipts derived from the concession; (2) to provide the City with a monthly certificate of its gross receipts; (3) to file annually an affidavit of a certified public accountant with respect to its gross revenues; (4) to pay promptly all of its taxes and fees; (5) to keep auditable records accessible to the City; (6) to display evidence of insurance; and (7) to not assign the agreement without written approval.

On June 25, 1985, new bids for the next five-year contract were submitted to the Airport Commission. Since Premier had submitted the highest qualified bid, the Airport Commission awarded it the concessionaire's contract on July 11, 1985. Subsequently, the press published reports that Premier had never obtained a city business license and was in arrears on its payment of city earnings taxes. The Airport Commission and city officials questioned the completeness and accuracy of Premier's financial disclosures to the City.

City ordinance gives the Board the right to reject any and all bids. The Board convened on August 7, 1985, to consider the proposed contract with Premier. Notice of the meeting had been posted less than

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

twenty-four hours in advance, in violation of the Missouri Sunshine Law, Mo.Rev. Stat. § 610.020 (1985). Premier's counsel attended the hearing and spoke concerning Premier's compliance with its prior obligation of keeping and making available auditable records and with respect to the allegations of fraud. The Board voted unanimously to reject Premier's bid and to audit Premier's records to determine whether any money was due. That same day, Mayor Schoemehl released a "press pack" containing statements that were critical of Premier's operation of the limousine service and which estimated that Premier owed approximately $100,000 to the City.

On August 8, 1985, the Airport Commission convened for a scheduled meeting. Notice of the meeting and a tentative agenda were posted more than twenty-four hours in advance, but the tentative agenda did not include the subject of the limousine concession. Nonetheless, the Airport Commission discussed the Board's decision to reject Premier's bid and voted to deny the contract to Premier. The Airport Commission authorized the Director of Airports to negotiate a contract to the next highest bidder and to commission an audit of Premier.

The Board met on August 28 and 30, 1985, in full compliance with the Missouri Sunshine Law, to reconsider Premier's bid. The Board allowed Premier to submit a written statement of position at or prior to the August 30 meeting. Premier notified the Board that it desired to appear and to present evidence at the August 30 meeting. Premier then submitted a letter requesting delay until completion of the audit. Ultimately, however, Premier appeared at the August 30 meeting and claimed that it did not owe the City any money and that it was exempt from certain city taxes.

Following an evidentiary hearing that extended over a six-day period, the district court issued an order on October 7, 1985, enjoining the City from executing the concessionaire's contract until it had afforded Premier a name-clearing hearing. The court stated:

The Court here does not determine that plaintiff's explanations were either conclusive or exculpatory, but only that they appear to be cogent and persuasive answers and that plaintiff should have been granted an opportunity to present them to the Board of Estimate and Apportionment *before* its rejection of his winning bid. Administrative and quasi-judicial decisions must, perforce, comport with the primary requirement of all fact finding functions—the opportunity for all sides to present basic facts. This is particularly required when public allegations infer dishonesty and professional irresponsibility.

Had the Board simply exercised its right to reject any and all bids and notified plaintiff privately of its reasons, then this action might not now be before this Court. The Board, however, did not do this. Specifically, the Mayor made the reasons for the Board's decision public by releasing a "press packet" which contained damaging and unsubstantiated information. The Mayor having chosen a public forum in the first instance, should have accorded plaintiff, a state senator with a viable and protected liberty interest in his good name and reputation, the opportunity to publicly rebut the allegations and information in the press packet. In America, everyone is entitled to due process regardless of guilt, innocence or reputation. When, as here, an administrative body castigates an individual and proceeds to deny that individual certain benefits on the basis of unsubstantiated information unnecessarily made public, then due process requires that the person be given the opportunity to address and refute the information relied on. The defendants' failure to accord plaintiff a fair hearing is a clear denial of due process. [Emphasis included.]

In a letter dated November 1, 1985, the Board notified Premier that it would hold a hearing on the matter of Premier's bid on November 7, 1985. The notice stated "that the reasons, if any, which are material to consideration of your bid are found in [vari-

ous provisions of your prior contract]." The notice contained provisions of the contract, bid specifications, the mayor's "press pack," and an exhibit recording Premier's earnings tax compliance. The notice specifically stated that Premier could present whatever witnesses and documents it wished for the purpose of clearing its name or otherwise.

Premier responded to the notice by moving to stay the Board's scheduled November 7 hearing until the City notified Premier of the reasons for the denial of the concessionaire's contract. On November 7, the district court entered an order granting the motion. On November 18, the City served a new notice on Premier which was intended to serve as the additional notice required to be given by the district court's order of November 7.

On November 25, 1985, we modified the preliminary injunction by requiring Premier to make payments to the City, pending this appeal, under the terms of the proposed 1985 contract, rather than under the terms of the 1980 contract.

Premier took the position at the November 27 hearing that it would not present evidence unless the City agreed to dismiss the appeal, contending that our order of November 25 prohibited the parties from taking any further action during the pendency of the appeal. The City disputed this interpretation of our order and refused to accept Premier's conditional offer.

The district court based its issuance of a preliminary injunction on its finding that the City had violated Premier's liberty interest when it denied Premier a renewal of its concessionaire's contract.

■ One whose "good name, reputation, honor, or integrity is at stake" because of governmental action is entitled to notice and an opportunity to be heard. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Measured against this mandate, and apart from the question whether

Premier had a liberty interest in a renewal of the contract, we conclude that the City accorded Premier all the process it was due.

Premier was provided an opportunity to clear its name on November 27, 1985. The notice given Premier by the Board of Estimate and Taxation was in accord with the district court's order. Our order of November 25 did not prohibit the Board from holding a due process hearing to give Premier an opportunity to clear its name.

Our stay of November 25, 1985, is vacated, the district court's preliminary injunction is reversed, and the case is remanded to the district court for such further proceedings as may be appropriate with respect to Premier's unresolved contentions, including its allegation that it was denied the contract for racial reasons.