## Gonzalez, et al. *v.* Philadelphia School District, et al.

Argued February 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Stephen F. Gold*, with him *Jonathan M. Stein*, for appellants.

*Alan H. Gilbert*, for appellees.

PER CURIAM, March 6, 1973:

This is an appeal from an Order of the Court of Common Pleas of the County of Philadelphia sustaining the Preliminary Objections of the defendants (as described in said Order, *infra*). At the argument before this Court, mention was made by the defendants that the appeal should be quashed for the reason that the lower court's Order was interlocutory and not final; but no formal motion was made or presented.

Also at the oral argument, counsel for the plaintiffs stated that plaintiffs did not desire to file an amended complaint on the "third and fourth causes of action" as specifically provided by the lower court Order; and that thereby they were waiving whatever rights they may have had to so amend.

As a result of these developments, counsel for both plaintiffs and defendants seek a final determination on the merits, as a matter of law, concerning the first and second causes of action stated in the complaint.

After submission of briefs, argument and a careful review of the entire record, we conclude that based upon the well-reasoned opinion of the court below, the Order of the Court must be affirmed. That opinion correctly and concisely sets forth the issues and proper rulings and holding. It reads as follows:

"Opinion

"Plaintiffs filed a Complaint in Equity against Defendants seeking injunctive and other equitable relief.

Preliminary Objections in the nature of demurrers and other asserted grounds were filed by Defendants. Plaintiffs thereupon filed an Amended Complaint in order to meet certain of these Objections and numerous Interrogatories were served upon Defendants. Defendants moved for a Protective Order as to said Interrogatories.

"Stated briefly, Plaintiffs averred that Tamayo Gonzalez, a student over compulsory school age, was expelled from John Bartram High School in Philadelphia for admittedly numerous and unexcused absences. Plaintiff Dennis Thomas, a student of compulsory school age, was suspended from John Bartram High School in December, 1970 for admittedly numerous and unexcused latenesses, and a notation of such suspension appeared in the student's file which was alleged to prejudice his admission to college and future employment. The Amended Complaint further averred the factually unsupported conclusion that sanctions for absences and lateness are imposed with greater frequency against black students and, in addition, that the Defendants are guilty of arbitrary and capricious expulsion or suspension as to students within a given school who have violated on an equal number of occasions.

"Plaintiffs therefore advanced four Causes of Action:

"1. The Pennsylvania Public School Code of 1949, [Act of March 10, 1949, P. L. 30, as amended] 24 P.S. Section 1-101 et seq. (the 'Code') does not authorize suspension or expulsion against students of compulsory school age for unexcused absences or lateness, but rather the only sanction available to the School District is the imposition of a monetary fine to be imposed upon the parents after appropriate proceedings.

"2. Students over compulsory school age have a right to attend school until they attain age 21 and may not be suspended or expelled for unexcused absences or lateness. Plaintiffs argue that if the School District

is powerless to expel or suspend students of compulsory school age, it must inevitably follow that the School District of Philadelphia is equally powerless to suspend or expel when the student is not compelled by law to attend school.

"3. Suspension and expulsion for absences and lateness are imposed at a disportionately higher rate in 'predominately black schools,' in violation of law.

"4. Within a given school, the Defendants have arbitrarily and capriciously meted out suspensions and expulsions to students guilty of an equal number of absences or latenesses.

"With reference to Plaintiffs First Cause of Action, namely that the Defendant School District lacks statutory power to suspend or expel students of compulsory school age for unexcused absences or lateness, Plaintiffs advance the following argument.

"1. The Public School Code of 1949, [§1326] 24 P.S. Section 13-1326 et seq. requires students of compulsory school age to attend school 'continuously through the entire term.'

"2. Section 13-1333 [§1333, 24 P.S. §13-1333] with the Section heading 'Penalties for Violation of Compulsory Attendance Requirements' thereupon states the exclusive sanctions which may be applied for violation of the compulsory attendance requirements. These sanctions in Section 13-1333 consist of a fine to be imposed upon the parents or those in parental relation after appropriate criminal proceedings. Plaintiffs recognize that additional weapons to compel attendance are provided by Section 13-1343 [§1343, 24 P.S. §13-1343] (the employment of attendance officers charged with the duty of placing such child in the school where he should be enrolled), and the juvenile delinquency proceedings set forth in Section 13-1338 [§1338, 24 P.S. §13-1338]. The specific sanctions contained in the Sections cited above are,

therefore, declared by Plaintiffs as preemptive over the sanctions contained in paragraph 13-1318 of the Code, and Section 13-1318 [§1318, 24 P.S. §13-1318] with the section heading 'Suspension and expulsion of pupils' does not apply to suspension or expulsion for *lateness or absences,* but is confined exclusively to situations involving 'disobedience or misconduct.'

"3. In further support of its position, Plaintiffs argue that the Statutory Construction Act, 46 P.S. §563 reading as follows: '§563. *Particular Controls General* Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, *the special provisions shall prevail and shall be construed as an exception to the general provision,* unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail. 1938 [sic 1937], May 28, P. L. 1019 art. IV, §63, 42 P.S. §563, (emphasis added),' requires the conclusion that Section 13-1318 of the Code being 'general' is inapplicable to absences and lateness situations and that such matters may only be punished by the 'special' sections mentioned above.

"This Court is unable to accept Plaintiffs reasoning or conclusions. Section 13-1318 of the Code clearly provides that every principal or teacher in charge of a public school may temporarily suspend a student for acts of 'disobedience or misconduct' and the section provides for the School Board, after a proper hearing, to suspend for such time as the Board may determine or it may permanently expel.

"The basic inquiry becomes reduced to a consideration of whether or not the school board could lawfully determine that numerous unexcused absences or latenesses constituted 'disobedience or misconduct' which

subjected an offender to suspension or expulsion. It is unhesitatingly concluded that such discretion was unquestionably vested in the school board and, further, that the exercise of such discretion should not be disturbed by the Courts absent an infringement of the constitutional rights of a student.

"Section 13-1318 is devoid of any language which removes the disposition of absence or lateness cases from its operation, and it would have been a simple matter for the Legislature to have inserted such exclusionary language, if such result was intended.

"A careful reading of Section 13-1318 in conjunction with Section 13-1333, Section 13-1338 and Section 13-1343 does not reveal any conflict in the meaning or operation of any such sections. It would appear to have been the legislative intent in designing the Code to empower the punishment of suspension or expulsion for all cases of 'disobedience or misconduct' and at the same time provide for additional and supplementary measures when dealing with violations of the compulsory attendance portions. It is particularly noteworthy that Section 13-1318 is the only section which permits of *punishment* against a student *in the capacity of a student,* and further it is the only section which provides for *punishment* within the school system and without recourse to the courts. Thus, Section 13-1333 (cited by Plaintiffs as the *exclusive* fount for punishing in lateness or absence cases) does not punish the student at all—rather, this section provides for a monetary fine against the *parents* in criminal proceedings. Section 13-1343 directs the attendance officer to arrest the child and place him in the school where the child was enrolled. This cannot be classified as a punishment or sanction for it merely places the child where the law says he belongs—to wit, in his school. Section 13-1338 in terms refers to 'incorrigibles' and 'delinquents' and provides for a juvenile court proceeding—a far cry from the

situation of a student who is guilty of absences or late-nesses and should be punished by suspension or expul-sion but who, most certainly, does not qualify as a ju-venile court delinquent. It would thus appear that Sec-tions 13-1318, 13-1333, 13-1338 and 13-1343 are not in conflict, are not mutually exclusive and on the contrary appear to be perfectly consistent, complementary and cumulative.

"Following Plaintiffs argument to its logical con-clusion would mean that a school board could take but the following steps in the absence or lateness cases:

"1. Seek criminal court imposition of a $2.00 fine *against the parents;*

"2. Send the attendance officer to arrest and re-place the child in school;

"3. Institute juvenile court proceedings to have the child declared a delinquent.

"Nothing in between these extremes—such as sus-pension or expulsion—would be available. This Court cannot agree that the Legislature intended any such absurd result, and on the contrary this Court is con-vinced that the temporizing measures of Section 13-1318 represented the actual legislative intent.

"But two reported cases appear to shed any light upon the problem here presented, and both appear to bolster this Court's views. In *Mayberry School Board v. Starr,* 45 C.C. 610 (1917) the imposition of a tem-porary suspension under a section similar to Section 13-1318 and *also* the institution of juvenile court proceed-ings under Section 13-1338 were permitted as cumula-tive remedies. In *Hollenbach v. Elizabethtown School District,* 18 D. & C. (2nd) 196 (1960) an overage student was expelled under Section 13-1318, and such action apparently upheld by the Court.

"The Plaintiffs reliance upon Section 563 of the Statutory Construction Act quoted supra is without merit. There does not appear to be any 'irreconcilable'

conflict between the various provisions of the school code, as we have analyzed it above, and therefore the cited section of the Statutory Construction Act would not be triggered. The mere fact that Section 13-1333 of the Code bears the heading 'Penalties for violation of compulsory attendance requirements' is not controlling. Section 554 [§54, 46 P.S. §554] of the Statutory Construction Act specifically states that such headings 'shall not be considered to control but may be used to aid in the construction thereof.' Section 551 [§51, 46 P.S. §551] requires that 'every law shall be construed if possible to give effect to all of its provisions.' Section 552 [§52, 46 P.S. §552] indicates the presumption 'that the Legislature intends the entire statute to be effective and certain.' Rather than lend support to Plaintiffs contention, the Statutory Construction Act effectively destroys such argument.

"In view of the fact that Plaintiff Gonzales is beyond the compulsory school age, Plaintiffs have advanced the proposition that, if the Defendants are precluded from suspension or expulsion for lateness or absences where the student is required to attend, then it must inevitably follow that the Defendants lack such authority where the student is not under a duty to attend. Plaintiffs further argue that students between the ages of six (6) and twenty-one (21) have a statutory right to attend school (Section 13-1301 [§1301, 24 P.S. §13-1301] of the Code) and that denial of this right by suspension or expulsion is in violation of the constitutional rights of such students. In answer to these contentions, it is apparent that Plaintiffs have overlooked that portion of Section 13-1301 of the Code which indicates that students between the ages of six (6) and twenty-one (21) 'may attend public schools' but 'subject to the provisions of this Act.' Clearly, this section grants a right—but not an absolute privilege to attend school unfettered by reasonable rules and regulations adopted

by the School Board for the attendance and punctuality of all students whether of compulsory age or over such age. Section 5-510 [§510, 24 P.S. §5-510] of the Code empowers School Boards to adopt reasonable rules and regulations regarding the management of school affairs and the conduct and deportment of all pupils attending the public schools in the district pursuant thereto. Section 15-1504 [§1504, 24 P.S. §15-1504] of the Code provides for the opening and closing hours of the school day, unless alternative times are required by the school boards. The 'Bill of Rights and Responsibility' and 'Regulations of John Bartram High School' set forth in paragraph 34 of the Defendants Preliminary Objections and in appendix 'O' thereof requires daily attendance and punctuality. It would appear to be entirely within the discretion of the school board to determine that blatant disregard of such properly adopted rules and regulations constituted 'disobedience or misconduct' calling for the imposition of suspension or expulsion under Section 13-1318.

"Plaintiff Gonzalez cannot therefore be heard to complain that he has been deprived by defendants of his Constitutional rights to attend school. The right to attend school was extended to him by the Code but obviously qualified by the requirement that he comply with the same reasonable rules and regulations which are applicable to all students. Gonzalez' admittedly numerous and unexcused absences constituted action on his part and from his voluntary choice whereby he deprived himself of the right to attend school by subjecting himself to the sanctions available against all students. Every right granted implies a recipocal [sic reciprocal] obligation to observe all reasonable rules and regulations which are adopted by appropriate authority to preserve such right for the benefit of all persons possessing such right. It is not only within the School District's purview, but in fact it would appear

to be its duty, to adopt reasonable rules and regulations as to daily attendance and punctuality for the benefit of all students in furtherance of their education as against the claims of Plaintiffs Gonzalez and Thomas that they have the right at their whim and caprice to pick and choose the dates when they desire to attend or the times of their arrival and departure.

"Carrying Plaintiffs arguments, in the overage situation, to their logical conclusion would present an absurd situation. Plaintiffs contend that Section 13-1318 does not apply to cases of absence or lateness, and that Section 13-1333, Section 13-1338 and Section 13-1343 do not apply to the overage student. Hence the board would be powerless to take any meaningful steps whatsoever to punish or deal with such conduct by the overaged. It is beyond belief that the Legislature intended such a ludicrous posture.

"The foregoing portions of this Opinion state this Court's reasons for sustaining the Preliminary Objections as to Causes of Action Nos. 1 and 2 of the Amended Complaint. In view of this Court's disposition of these Causes of Action, it is unnecessary to dwell upon the numerous other points raised by Defendants in their Preliminary Objections as to these Causes of Action.

"With reference to Causes of Action No. 3 and 4, the Preliminary Objections thereto are sustained at this time for the reason that factually unsupported conclusions alone have been pleaded. The charges contained in such Causes of Action are grave ones, however, and an opoprtunity should be granted to Plaintiffs to cure such defective pleadings by appropriate amendment. It would appear that Plaintiffs shall require the aid of discovery procedures in the preparation of proper pleadings as to these Causes of Action and possible trial of such Causes of Action thereafter. If these serious charges are proved to be true, this Court will not

countenance any racial discrimination as inferentially implied in Cause of Action No. 3 or any arbitrary application of sanctions as might appear in Cause of Action No. 4. Plaintiffs reliance on mere conclusory allegations as to these charges—without the averment of any factual material—generates the suspicion that Plaintiffs are far from knowledgeable as to these items and hope to develop information through a 'fishing expedition.'

"This Court is not averse to such an expedition—its aims are salutary. The question then arises—who should bear the expense for such extensive probing? Plaintiffs Interrogatories submit 249 questions, including subdivisions, and require statistical answers which can be obtained only by manual search of the records of over 123,000 individual students and said records are kept at 58 different schools. The extent of the fiscal burden to be encountered in compiling such information is thus readily apparent and must be borne by either Defendants or Plaintiffs. The financial plight of the Philadelphia School District is well known to any member of this community, and any addition to its burden should be avoided, unless some compelling reason exists to the contrary. Utilization of the School District's pinched treasury for this purpose will deprive other students and the public of needed services provided by the School District. Under all of the circumstances, it is therefore concluded that such information as may be readily supplied by the School District at trifling expense must be forthcoming in response to an appropriate interrogatory. On the other hand, such information as requires more than a minimal expenditure in such compilation need not be supplied by the School District but shall nevertheless be made available to Plaintiffs for inspection and copying. This Court conceives that Pennsylvania Rule of Civil Procedure 4011 permits the issuance of a Protective Order where dis-

covery would cause unreasonable 'expense or oppression' to the deponent or would require the making of an 'unreasonable investigation.' Accordingly, the Protective Order sought by Defendants has been partially granted and partially denied as will appear in the Order attached hereto, after analysis by this Court of each Interrogatory.

"The Court wishes to observe that the first cause of action with reference to Plaintiff Gonzalez has become moot as a result of agreement reached in this litigation whereunder said Plaintiff has been given an opportunity to pass the requisite examinations. Gonzalez has successfully passed such examinations and a diploma has been awarded to him by his high school.

"The following constitutes the Order of this Court:

"1. Defendants Preliminary Objections are sustained as to the first and second causes of action specified in Plaintiffs Amended Complaint.

"2. Defendants Preliminary Objections are sustained as to the third and fourth causes of action set forth in Plaintiffs Amended Complaint, provided, however, that Plaintiffs are hereby given leave to further amend Plaintiffs Complaint as to said third and fourth causes of action after completion of discovery pursuant to Plaintiffs first set of Interrogatories previously filed and in accordance with Paragraph 3 of this Order.

"3. Defendants Motion for a Protective Order is granted in part and denied in part as follows:

"(a) Within twenty days from the date of this Order, Defendant shall supply to Plaintiffs Answers to the following numbered Interrogatories: 1, 2, 3, 4, 9, 10, 12, 13, 14, 17, 52, 43, [sic 53] 54, 55, 58 and 59.

"(b) Defendants shall not be required to prepare or supply Answers to the following Interrogatories, provided, however, that Defendants are hereby ordered to make available to Plaintiffs for inspection and copying at Defendants various locations where such are cus-

tomarily stored and at times to be mutually agreed upon by the parties such documents and records regularly kept and maintained by Defendants as will enable Plaintiffs, at Plaintiffs sole expense, to secure the information requested by the following Interrogatories. In the event of the inability of the parties to agree, this Court shall fix the times for such inspection and copying. It is the purpose of this Order to enable the Plaintiffs to secure such information, but without expense to Defendants, except for such expense as may be incidental to making such material available to Plaintiffs for inspection and copying. The foregoing applies to the following Interrogatories: 5, 6, 7, 8, 11, 15, 16, 18, 19, 20, 21, 22 through 51, 56 and 57."