## Figueroa v. Thompson

*John H. Coroso* and *Paul A. Robb,* for plaintiff.
*Joseph A. Massa, Jr.,* for defendant.

WOLFE, *P.J.*, August 12, 1975 — This matter is before us in equity, plaintiffs seeking an injunction to enjoin defendants, Warren County School District officials, from any further suspensions of plaintiffs from the Eisenhower High School.

Initially plaintiffs sought a preliminary injunction which was not acted on by the court due to an informal meeting of counsel in chambers and a mutual understanding that there would be no further suspensions until the matter was heard and finally concluded by an evidentiary hearing which was held on July 7, 1975. After filing of extensive briefs the matter is now ready for decision.

Prior to hearing, plaintiffs moved for summary judgment which we then reserved and now deny. On a motion for summary judgment the law is clear. " 'Summary judgments can be granted only if the pleadings, depositions, answers to interogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa. R.C.P. 1035(b).' " McFadden v. American Oil

Company, 215 Pa. Superior Ct. 44, 257 A.2d 283 (1969); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A.2d 629 (1968). The burden is on the moving party and the record must be examined in the light most favorable to the non-moving party. Schacter v. Albert, 212 Pa. Superior Ct. 58, 61, 62, 239 A.2d 841 (1968): " 'The Court must consider both the record actually presented and the record potentially possible at the time of trial. . . . A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact. . . . It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts . . . . Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment.' S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235, 237, 238 (C.A. 6th Cir.), cert. denied, 375 U.S. 824 (1963)."

In the instant case, the complaint alleges defendants did not properly promulgate "procedures for restroom restrictions" and the subsequent suspension of plaintiffs for violation of the rules and the alloted time for them to use the restroom deny them of their constitutional right to an education. The complaint was not endorsed with a notice to plead and, as a consequence, no answer was filed to the complaint. However, plaintiffs filed interrogatories which were answered and which are in conflict with allegations of the complaint asserting due notice was given plaintiffs of the restrictions and the consequences for any violation thereof and an opportunity to respond or produce their own

witnesses to prove the violations were not true. Plaintiffs' motion for summary judgment is grounded in defendants' admission in the answer to the interrogatories that the school procedure for restroom restrictions were not promulgated by the Warren County Board of Education and therefore these restrictions are contrary to Pennsylvania Code, Title 22, §12.6(a)

Because of this general conflict in the pleadings of the parties' respective position despite the specific admission of defendants this prevents the court from entering a judgment as a matter of law: S. J. Groves & Sons Company v. Ohio Turnpike Commission, supra.

For these reasons the motion for summary judgment is denied.

Turning to the merits, plaintiffs were suspended from school on two different occasions for a period of three consecutive days each for violation of restroom restructions. Plaintiffs argue (1) The school "procedures for restroom restrictions" have not been promulgated by the Board of Education and are therefore contrary to Pennsylvania Code, Title 22, §12.6(a), and the Act of March 10, 1949, P.L. 30, art. V, sec. 510, as amended, 24 P.S. §5-510, in that the principal of the high school was responsible for the preparation of the restriction list rather than the Board; (2) That nothwithstanding, the regulations are capricious and arbitrary and thus contrary to the due process clause of the Fourteenth Amendment to the Constitution of the United States; (3) The restriction list was posted without giving plaintiffs notice of the intent to place their names on the list or a prior opportunity to have their names removed, all of which is contrary to the Fourteenth Amendment; and (4) They were suspended for breach of the regulations

which did not provide for notice of the charges against them or an opportunity to be heard, all in violation of the Fourteenth Amendment.

The avowed purpose of the restroom restrictions and which is not disputed is to curtail smoking in the restrooms during school hours and with a secondary benefit of curbing vandalism, and to permit others to use the restroom uninhibited by smoke. To this end a list of known student smokers was prepared by the principal of the school in conjunction with some of the teachers and which includes plaintiffs' names thereon, effective February 18, 1975. Plaintiffs' suspensions were incurred in March, 1975.

Because of the arguments of plaintiffs it is appropriate the restrictions be set out here in full:

## "PROCEDURES FOR RESTROOM RESTRICTIONS

PLEASE POST                              PLEASE POST

"Effective February 18, 1975

"1. A list of pupils whose restroom use shall be restricted will be provided all teachers and other concerned staff members. The list will be revised periodically as necessary. Mr. Neese will have final approval for the names on the list.

"2. Pupils on the above list shall be restricted to using restrooms at 9:25-9:30, 11:30-11:35, and 1:35-1:40. Use of restrooms at any other time of day shall be only with the specific permission of a teacher. Such special use of restrooms shall be permitted only in extraordinary circumstances, not routinely.

"3. It shall be a breach of the School Conduct Code for pupils whose restroom privileges are restricted to be in a restroom at any time not covered

by the above provisions. Unauthorized restroom use by these pupils is to be reported immediately.

"First offense — Three day suspension

"Second offense — Three day suspension and parent conference.

"Third offense — Hearing request of School's Committee of the Board, with recommendation of expulsion.

"4. Pupils disciplined for smoking in or around school property will automatically be placed on restricted status with regard to restroom use.

"5. Pupils who wish to appeal for release from such restricted status must secure an appointment with Mr. Neese for such purpose. Such consideration will be given no more than once every three months after the beginning date of restroom restriction.

"6. These restroom restrictions shall apply to before-school hours, but shall not apply to *authorized use* of the school building after normal school hours; e.g. athletic contests, except that pupils who smoke at those times the building is open for their authorized use, after the normal school day, shall be placed on restricted status regarding restroom use during the school day."

It is these regulations plaintiffs argue should have been promulgated by the Board rather than the school.

Section 5-510 of the Public School Code of 1949 authorizes, in permissive language, the Board to adopt and enforce rules and regulations for the conduct of teachers and students and this act as applicable in the instant case states:

"The board of school directors in any school district *may* adopt and enforce such reasonable rules and regulations as it *may* deem necessary and

proper, regarding the management of its school affairs, and the conduct and deportment of all superintendents, teachers . . . as well as regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school." (Emphasis added.)

In contrast to the permissive nature of the statute is Title 22 of the Pennsylvania Code, §12.6(a), providing:

"The board of school directors *shall* define and publish the types of offenses that would lead to *exclusion* from school."[1] (Emphasis added.)

We are required to give a fair interpretation of the wording of this legislation and Code bearing in mind the intent of the legislature and its designated agents to implement the legislation and not to interpret the acts that would lead to a ridiculous or unreasonable result.

In this light we think it is clear the board has the discretion under section 5-510 of the Public School Code of 1949, to adopt and enforce reasonable rules for the conduct and deportment of the students within its district during school hours. Smoking on school property and especially in restroom facilities is, in our opinion, a proper concern of the Board in order that the process of teaching and learning can be accomplished in a healthy and orderly atmosphere as well as the comfort and health of non-smokers within the school who are compelled to use the same facilities. Indeed, plaintiffs do not argue to the contrary and agree that

---

1. As contrasted from "Suspension" from school.

such regulations are not, per se, without the scope of the Board's function but rather argue the restrictions are arbitrary in the times permitted to attend the facilities each day as well as the limited period of time within each period. We cannot agree with the position as the record does not support it. Plaintiffs have the burden of proof to show the regulations are unconstitutional unless they are so arbitrary, unreasonable and capricious that the court could declare them unconstitutional on their face; indeed, constitutionality is presumed until the contrary is shown.

As we have noted, section 5-510 is permissive and the Board for reasons hereinafter set forth has exercised its prerogative in formulating a policy against smoking on school property. The Pennsylvania Code mandates the Board define and publish the types of offenses that would lead to exclusion from school. Plaintiffs' argument that the school rather than the Board enacted and published the regulations is one of form rather than substance, that is, since the Board can point to no regulation promulgated by it the Code has been violated and the regulations must fall. Again, we disagree. On January 14, 1974, at a regular convened school district meeting we note the following minutes from its record:

"The following policy on smoking was presented:

"It is the policy of the Warren County Board of Education that smoking shall not be permitted by students while students are on school district property. In recent weeks, much time and study has gone into the evaluation of the 'No Smoking' policy and after weighing all of the issues involved, it is the opinion of the Board that this is the

best policy for all concerned and this Board will expect *that administrators and teachers shall enforce a 'No Smoking' policy on the property of the Warren County School District.* (Emphasis added.)

"Punishment for students who smoke on School District Property shall be handled by the Principals of the various schools of the county. In the event that a student is apprehended smoking three (3) times, that student will automatically be brought to the Schools Committee of the Warren County School District for suspension.

"A motion was made by Mr. Hollister and duly seconded that the above statement of policy on smoking be adopted. The motion was carried by the following vote: Ayes — Hollister, Jewell, Johnson, Pearson, Peterson, Peltz, Swanson, and Weller. Nays — none."

This policy was known to the principal of the school. Further, in November, 1967, the School District formulated and promulgated policies under which the District would operate by publication of a manual containing statements and operational policies adopted by the Board November 6, 1967, and included in the policy formulation for school operation under Section II — School organization, Subsection E — Administration is the delegation to the Office of the Superintendent of Schools through the directives of the School Board. This section delegated the Board policies to the Superintendent of Schools who, in turn, has jurisdiction over the principal of each school and the duties of "organization, administration and discipline" of the respective schools. Each principal is directly responsible to the superintendent for the performance of his delegated duties from the

superintendent. The principal, in turn, has charge of all of the school's activities and the principal is obligated to keep himself informed concerning policies of the Board.

In keeping with the Board policies and the mandates of the superintendent, the principal of the school in conjunction with the parents and student council of the school prepared and promulgated an "Eisenhower High School Student Handbook" which outlines the school's policy on smoking, drinking and drugs. This handbook is given to each student at the beginning of the school year and on page 23 and 24 thereof we find the following language:

"The following standards apply to Eisenhower High School:

"1. There will be no smoking in the school building at any time by students.

"2. (Not applicable.)

"3. (Not applicable.)

"4. It is within the right of the school officials to act when violations are suspected to the smoking, drinking and drug codes, and to take whatever steps are necessary to protect the health, safety and welfare of the student body.

"5. Infractions of any of the above rules may mean suspension and/or consultation with parents."

We see no violation of plaintiffs' constitutional rights through this line of authority which was promulgated by the Board and implemented by the superintendent and the school principal and made known to plaintiffs and to the student body in general.

Specifically, concerning plaintiffs, after the student smoking list was prepared there was a spe-

cial general assembly for those students on the list and at which time they were informed of the list, the reason for the list and the consequences for any violation. We note both plaintiffs were not present at this assembly because they were vacationing in Florida.[2] However, upon their return they were called into the principal's office and the regulations were given to each and explained to each and each had no questions concerning the regulations and indeed, plaintiff Figueroa became belligerent concerning the list and vowed to violate them because she was advised the "regulations were not any good."

Despite the fact the names of the restroom restriction list indicated that it should be "posted," there is no evidence in this regard to conclude it was, in fact, posted in the halls of the school or any other place but rather was kept in the principal's office and distributed to the teachers. The allegation the restriction list was posted without giving notice of the intent to post their names or an opportunity to present their side of the matter is not correct. On the contrary, a reading of the restroom restrictions, paragraphs 3, clearly advise that it is a breach of the "School Conduct Code" for pupils whose privileges are restricted to be in a restroom at any time than the restrictions permit, and it also clearly advises the pupils as to the consequences, to-wit, the suspension and if a third offense is incurred a hearing would be requested before the board with recommendation by the school for expulsion. Reading the restroom restrictions in the light of the Pennsylvania Code as well as the policy of the board and the policy set down by the school

2. It is questionable whether plaintiffs' absence at this time was legal.

and the student handbook concerning smoking, we conclude the complaint of plaintiffs that they lacked proper notice or an opportunity to be heard prior to their suspension is frivolous. Indeed, plaintiff Maria Figueroa admitted she knew of the rules prior to her suspension and admitted that she was a smoker and was caught smoking before the rules were promulgated and admitted she knew the consequences if she violated the rules. We here note that plaintiff Gwen Woodin did not trouble to testify on her own behalf to support any of her allegations.

Concerning the reasonableness of the rules, we find they comport to normal, human bodily functions and the record supports this position; additionally, each pupil on the list was permitted to have free access to the nurses' restroom at any time simply by making a request if they had a special body function problem. Each student was also, under section 5 of the regulations, permitted to have his restrictive status reviewed periodically by the principal and an opportunity to have his name removed from the list.

In the recent case from our United States Supreme Court in Goss et al. v. Lopez et al., 419 U.S. 565, 582, 95 S. Ct. 729 (1975), the court held a student must be notified of the charges against him by the school authorities prior to a discharge and be given an opportunity to be heard in this language:

"There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain

his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. . . .

"We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process."

There are a myriad of cases concerning regulations of school dress and personal appearance of the students and regulating hair length. The courts have generally struck down these regulations as being arbitrary and unreasonable as they do not impede a proper environment for the teaching and learning process: Axtell v. La Penna, 323 F. Supp. 1077 (W.D. Pa. 1971), and the cases therein cited:

"In the absence of a clear showing that school regulations are necessary to prevent disruption of the educational process, recent case law recognizes that an individual's hair style and personal appearance are entitled to protection from action by the State, or its agents, under the Due Process Clause of the Fourteenth Amendment."

In the instant case we are not dealing with a "personal liberty" but rather with the right of the entire student body to enjoy clean restrooms, not clouded with cigarette smoke poured out by those who have elected to smoke. Our courts have said many times that the Fourteenth Amendment does not permit one to exercise his rights by trampling upon the rights of others. Reasonable regulations by administrative agencies of the State for the welfare of all of its people are permissible. This requires the Board as well as each school functioning under the jurisdiction of the Board by its liason, the Superintendent, to be responsible over the conduct of the pupils to assure all students an education without disruptive factors: Woodring v. School Directors of Bald Eagle Area School District, 56 D. & C. 2d 401 (1972); Caspar v. Micken, 54 D. & C. 2d 218 (1971), wherein it is stated:

"[T]he court has emphasized the need for affirming the comprehensive authority of the State and school officials, consistent with fundamental constitutional safeguards to prescribe and control conduct in the schools."

Section 13-1318 of the Public School Code of 1949 permits a principal or teacher in charge of a public school to temporarily suspend any pupil on account of disobedience or misconduct provided that the suspension is promptly brought to the attention of the superintendent or supervising principal or the Board and the Board may "after a proper hearing suspend such child for such time as it may determine, or may permanently expel him." The regulations in question clearly provide for this procedure upon the third violation: Gonzalez et al. v. Philadelphia School District, 8 Pa. Commonwealth Ct. 130, 301 A.2d 99 (1973), held the Public

School Code of 1949 vested discretion in the School Board to determine what conduct would subject a student to suspension or expulsion and that the imposition of suspension or expulsion was within the intent of the legislature in enacting the Code and the exercise of such discretion would not be disturbed by the Court "absent an infringement upon the constitutional rights of a student."

Penultimately, plaintiffs' argument because the Board did not "specifically" enact a "restrictive restroom regulation" renders the regulation void and the subsequent action by the school in plaintiffs' suspensions were illegal is without merit. The implementation of the Board's policy against smoking by the individual schools is a proper delegation to the school to formulate means of enforcement. To hold to the contrary would, in our opinion, create an unreasonable burden upon the Board to minutely spell out the regulations which may not be appropriate for general application. In this regard we think it is reasonable that each school, following Board policy, is in a better position to formulate its individual regulations in accordance with its school hours and pupil attendance. We think it is critical to note that section 12.6(a) of Title 22 of the Pennsylvania Code mandates that the Board define and publish the types of offenses that would lead to exclusion. The Code does not mandate the Board formulate regulations that would subject a pupil to suspension or exclusion.

Finally, plaintiffs argue the posting of their names on the restrictive list brings upon them a badge of disgrace and likens the school's action to that factual situation in Wisconsin v. Constan-

tineau, 400 U.S. 433, 91 S. Ct. 507 (1971). In that case the State of Wisconsin struck down as unconstitutional a statute permitting the posting of alleged alcoholics' names in liquor stores. In so doing the court stated the Wisconsin statute did not contain any provision whatsoever for any notice and hearing and when a person's name and reputation is in question because of conduct of the Government he has a right to notice and an opportunity to be heard. Certainly we agree the posting of one's name in a public place alleging or at least leaving the inference that he is alcoholic is degrading and a questionable exercise of the police power of the State but to parallel Wisconsin with the instant case is not warranted. There is no badge of disgrace nor is one's name or reputation affected simply because he smokes cigarettes. Although smoking has been questioned as a health hazard, nonetheless, it is a personal prerogative provided it is confined to the individual using the tobacco. Further, as stated, we have no evidence in this record that the names of the plaintiffs were actually posted in a public place but were within the confines of the principal and teachers' office, and there is no question plaintiffs had notice their names were on the list after it was prepared and were given an opportunity to be heard concerning the procedure.

We recognize plaintiffs are entitled to a public education without unreasonable interference. However, the Fourteenth Amendment does not permit plaintiffs to exercise their right of education to the detriment of the remaining student body and the School District not only has a right but has a duty to formulate and implement reasonable

rules for the protection and progress of all those compelled to attend public school by law. In this regard we hold plaintiffs' constitutional rights have not been trampled nor shredded by defendants nor have they suffered any irreparable damage entitling them to an injunction and we therefore enter the following decree

## DECREE NISI

And now, August 12, 1975, the application for an injunction against defendants is denied.

Plaintiffs are granted 20 days to take exceptions and in default thereof the prothonotary shall enter the within decree nisi upon the record as absolute.