## WISCONSIN *v.* CONSTANTINEAU

No. 95. Argued December 10, 1970—Decided January 19, 1971

Douglas, J., delivered the opinion of the Court, in which Harlan, Brennan, Stewart, White, and Marshall, JJ., joined. Burger, C. J., filed a dissenting opinion, in which Blackmun, J., joined, *post*, p. 439. Black, J., filed a dissenting opinion, in which Blackmun, J., joined, *post*, p. 443.

*Benjamin Southwick*, Assistant Attorney General of Wisconsin, argued the cause for appellant. With him on the brief were *Robert W. Warren*, Attorney General, and *Robert D. Martinson*, Assistant Attorney General.

*S. A. Schapiro* argued the cause and filed a brief for appellee.

434

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellee is an adult resident of Hartford, Wis. She brought suit in a federal district court in Wisconsin to have a Wisconsin statute declared unconstitutional.[1] A three-judge court was convened, 28 U. S. C. § 2281. That court, by a divided vote, held the Act unconstitutional, 302 F. Supp. 861, and we noted probable jurisdiction. 397 U. S. 985.

The Act, Wis. Stat. § 176.26 (1967), provides that designated persons may in writing forbid the sale or gift of intoxicating liquors to one who "by excessive drinking" produces described conditions or exhibits specified traits, such as exposing himself or family "to want" or becoming "dangerous to the peace" of the community.[2]

---

[1] 28 U. S. C. § 1343 provides: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[2] Section 176.26 reads as follows:

"(1) When any person shall by excessive drinking of intoxicating liquors, or fermented malt beverages misspend, waste or lessen his estate so as to expose himself or family to want, or the town, city, village or county to which he belongs to liability for the support of himself or family, or so as thereby to injure his health, endanger the loss thereof, or to endanger the personal safety and comfort of his family or any member thereof, or the safety of any other person, or the security of the property of any other person, or when any person shall, on account of the use of intoxicating liquors or fermented malt beverages, become dangerous to the peace of any community, the wife of such person, the supervisors of such town, the mayor, chief of police or aldermen of such city, the trustees of such village, the county superintendent of the poor of such county, the chairman of the county board of supervisors of such county, the

The chief of police of Hartford, without notice or hearing to appellee, caused to be posted a notice in all retail liquor outlets in Hartford that sales or gifts of liquors to appellee were forbidden for one year. Thereupon this suit was brought against the chief of police claiming damages and asking for injunctive relief. The State of Wisconsin intervened as a defendant on the injunctive phase of the case and that was the only issue tried and decided, the three-judge court holding the Act unconstitutional on its face and enjoining its enforcement. The court said:

"In 'posting' an individual, the particular city official or spouse is doing more than denying him the ability to purchase alcoholic beverages within

district attorney of such county or any of them, may, in writing signed by her, him or them, forbid all persons knowingly to sell or give away to such person any intoxicating liquors or fermented malt beverages, for the space of one year and in like manner may forbid the selling, furnishing, or giving away of any such liquors or fermented malt beverages, knowingly to such person by any person in any town, city or village to which such person may resort for the same. A copy of said writing so signed shall be personally served upon the person so intended to be prohibited from obtaining any such liquor or beverage.

"(2) And the wife of such person, the supervisors of any town, the aldermen of any city, the trustees of any village, the county superintendent of the poor of such county, the mayor of any city, the chairman of the county board of supervisors of such county, the district attorney or sheriff of such county, may, by a notice made and signed as aforesaid, in like manner forbid all persons in such town, city or village, to sell or give away intoxicating liquors or drinks or fermented malt beverages to any person given to the excessive use of such liquors, drinks or beverages, specifying such person, and such notice shall have the same force and effect when such specified person is a nonresident as is herein provided when such specified person is a resident of said town, city or village."

Section 176.28 makes the sale or gift of liquor to such a person a misdemeanor.

the city limits. In essence, he is giving notice to the public that he has found the particular individual's behavior to fall within one of the categories enumerated in the statutes. It would be naive not to recognize that such 'posting' or characterization of an individual will expose him to public embarrassment and ridicule, and it is our opinion that procedural due process requires that before one acting pursuant to State statute can make such a quasi-judicial determination, the individual involved must be given notice of the intent to post and an opportunity to present his side of the matter." 302 F. Supp., at 864.

We have no doubt as to the power of a State to deal with the evils described in the Act. The police power of the States over intoxicating liquors was extremely broad even prior to the Twenty-first Amendment. *Crane* v. *Campbell,* 245 U. S. 304. The only issue present here is whether the label or characterization given a person by "posting," though a mark of serious illness to some, is to others such a stigma or badge of disgrace that procedural due process requires notice and an opportunity to be heard. We agree with the District Court that the private interest is such that those requirements of procedural due process must be met.

It is significant that most of the provisions of the Bill of Rights are procedural, for it is procedure that marks much of the difference between rule by law and rule by fiat.

We reviewed in *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, 895, the nature of the various "private interest[s]" that have fallen on one side or the other of the line. See also *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 339–342. Generalizations are hazardous as some state and federal administrative procedures are sum-

mary by reason of necessity or history. Yet certainly where the State attaches "a badge of infamy" to the citizen, due process comes into play. *Wieman* v. *Updegraff,* 344 U. S. 183, 191. "[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 168 (Frankfurter, J., concurring).

Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. "Posting" under the Wisconsin Act may to some be merely the mark of illness, to others it is a stigma, an official branding of a person. The label is a degrading one. Under the Wisconsin Act, a resident of Hartford is given no process at all. This appellee was not afforded a chance to defend herself. She may have been the victim of an official's caprice. Only when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented.

It is suggested that the three-judge court should have stayed its hand while the aggrieved person repaired to the state courts to obtain a construction of the Act or relief from it. The fact that Wisconsin does not raise the point does not, of course, mean that it lacks merit. Yet the suggestion is not in keeping with the precedents.

Congress could, of course, have routed all federal constitutional questions through the state court systems, saving to this Court the final say when it came to review of the state court judgments. But our First Congress [3] resolved differently and created the federal court system and in time granted the federal courts various heads of

---

[3] The first Judiciary Act is in 1 Stat. 73.

jurisdiction,[4] which today involve most federal constitutional rights. Once that jurisdiction was granted, the federal courts resolved those questions even when they were enmeshed with state law questions. In 1941 we gave vigor to the so-called abstention doctrine in *Railroad Commission* v. *Pullman Co.*, 312 U. S. 496. In that case an authoritative resolution of a knotty state law question might end the litigation and not give rise to any federal constitutional claim. *Id.*, at 501. We, therefore, directed the District Court to retain the suit pending a determination by a state court of the underlying state law question. We applied the abstention doctrine most recently in *Fornaris* v. *Ridge Tool Co.*, *ante*, p. 41, where a relatively new Puerto Rican statute, which had not been authoritatively construed by the Commonwealth's courts, "might be judicially confined to a more narrow ambit which would avoid all constitutional questions." We ordered the federal courts to stay their hands until the Puerto Rican courts had spoken. Speaking of *Reetz* v. *Bozanich*, 397 U. S. 82, we noted that the "three-judge federal court should not have proceeded to strike down an Alaska law which, if construed by the Alaska Supreme Court, might be so confined as not to have any constitutional infirmity." *Ante*, at 43. But the abstention rule only applies where "the issue of state law is uncertain." *Harman* v. *Forssenius*, 380 U. S. 528, 534. Thus our abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe. *Reetz* v. *Bozanich, supra; City*

---

[4] 28 U. S. C. § 1343 (3) involved in the present case came into the statutes in 1871., 17 Stat. 13. In 1875 Congress enlarged federal jurisdiction by authorizing the "federal question" jurisdiction presently contained in 28 U. S. C. § 1331. See 18 Stat. 470. We recently reviewed this history in *Zwickler* v. *Koota*, 389 U. S. 241, 245–248.

*of Meridian* v. *Southern Bell Tel. & Tel. Co.*, 358 U. S. 639.

.In the present case the Wisconsin Act does not contain any provision whatsoever for notice and hearing. There is no ambiguity in the state statute. There are no provisions which could fairly be taken to mean that notice and hearing might be given under some circumstances or under some construction but not under others. The Act on its face gives the chief of police the power to do what he did to the appellee. Hence the naked question, uncomplicated by an unresolved state law, is whether that Act on its face is unconstitutional. As we said in *Zwickler* v. *Koota,* 389 U. S. 241, 251, abstention should not be ordered merely to await an attempt to vindicate the claim in a state court. Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim. *Id.,* at 250–251. We would negate the history of the enlargement of the jurisdiction of the federal district courts,[5] if we held the federal court should stay its hand and not decide the question before the state courts decided it.

*Affirmed.*

Mr. Chief Justice Burger, with whom Mr. Justice Blackmun joins, dissenting.

The Court today strikes down, as unconstitutional, a Wisconsin statute that has never been challenged or tested in the Wisconsin state courts. The judges of Wisconsin probably will be taken by surprise by our summary action since few, if any, have ever heard of this case.

---

[5] See n. 4, *supra*.

Very likely we reach a correct result since the Wisconsin statute appears, on its face and in its application, to be in conflict with accepted concepts of due process.

The reason for my dissent is that it seems to me a very odd business to strike down a state statute, on the books for almost 40 years, without any opportunity for the state courts to dispose of the problem either under the Wisconsin Constitution or the U. S. Constitution. For all we know, the state courts would find this statute invalid under the State Constitution,[1] but no one on either side of the case thought to discuss this or exhibit any interest in the subject. Since no one could reasonably think that the judges of Wisconsin have less fidelity to due process requirements of the Federal Constitution than we do, this case is, for me, a classic illustration of one in which we should decline to act until resort to state courts has been exhausted. At oral argument counsel for Mrs. Constantineau was candid in saying that he had deliberately avoided resort to the state courts because he could secure, and indeed did secure, a three-judge federal district court to decide the issue and, in that posture, appeal would lie directly to this Court.

Only recently in the 1969 Term we held unanimously that a challenge, under the Equal Protection Clause of the Fourteenth Amendment and under certain provisions of the Alaska Constitution, to the constitutionality of a state statute restricting commercial salmon fishing licenses should not have been decided by the federal district court until the courts of Alaska had acted. There,

---

[1] Although Wisconsin has no due process clause as such, Art. I, § 1, of the Wisconsin Constitution has been held by the Wisconsin Supreme Court to be substantially equivalent to the limitation on state action contained in the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Pauly* v. *Keebler*, 175 Wis. 428, 185 N. W. 554 (1921).

as here, the statute's challenger wanted to use the "short cut" Congress has authorized. As here, the "short cut" was to convene a three-judge federal district court which held the Alaska statute invalid. Notwithstanding that the license applicants presented a sound claim, MR. JUSTICE DOUGLAS, speaking for a unanimous Court, said:

> "We are advised that the provisions of the Alaska Constitution at issue have never been interpreted by an Alaska court. The District Court, feeling sure of its grounds on the merits, held, however, that this was not a proper case for abstention, saying that 'if the question had been presented to an Alaska court, it would have shared our conviction that the challenged gear licensing scheme is not supportable.' 297 F. Supp., at 304. The three-judge panel was a distinguished one, two being former Alaska lawyers. And they felt that prompt decision was necessary to avoid the 'grave and irreparable' injury to the 'economic livelihood' of the appellees which would result, if they could not engage in their occupation 'during this year's forthcoming fishing season.' *Ibid.*

> "It is, of course, true that abstention is not necessary whenever a federal court is faced with a question of local law, the classic case being *Meredith* v. *Winter Haven,* 320 U. S. 228, where federal jurisdiction was based on diversity only. Abstention certainly involves duplication of effort and expense and an attendant delay. See *England* v. *Louisiana State Board,* 375 U. S. 411. That is why we have said that this judicially created rule which stems from *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, should be applied only where 'the issue of state law is uncertain.' *Harman* v. *Forssenius,* 380 U. S. 528, 534." *Reetz* v. *Bozanich,* 397 U. S. 82, 86 (1970).

This very wise doctrine is an essential one of policy and is a keystone of federalism. Previously this Court had underscored this concept, saying:

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. . . . In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." *City of Meridian* v. *Southern Bell Tel. & Tel. Co.*, 358 U. S. 639, 640–641 (1959).

See also *Fornaris* v. *Ridge Tool Co., ante,* p. 41.

It is no answer to contend that there is no ambiguity in the Wisconsin statute and hence no need to abstain; in *Reetz* the Alaska statute could not have been more plain, or less susceptible of a limiting construction. Yet, in furtherance of this Court's firm policy to steer around head-on collisions with the States by avoiding unnecessary constitutional decisions, we reversed the District Court and remanded with instructions to stay its hand while the litigants exhausted state court remedies for resolution of their challenge to the statute. See also *Fornaris* v. *Ridge Tool Co., supra. Reetz* cannot be distinguished and I see no reason to depart from the principles it reaffirmed.[2]

---

[2] Here there is not the urgency presented by *Reetz* where our action in remanding for state court consideration effectively precluded appellees from securing a commercial fishing license for at least one more season. No such urgency is presented by the instant case.

I quite agree that there is no absolute duty to abstain—to stay our hand—until the state courts have at least been asked to construe their own statute, but for me it is the negation of sound judicial administration—and an unwarranted use of a limited judicial resource—to impose this kind of case on a three-judge federal district court, and then, by direct appeal, on this Court. Indeed, in my view, a three-judge district court would be well advised in cases such as this, involving no urgency or question of large import, to decline to act.

This Court has an abundance of important work to do, which, if it is to be done well, should not be subject to the added pressures of non-urgent state cases which the state courts have never been called on to resolve. Neither the historic role of this Court nor any reasonable duty placed on us, calls for our direct intervention when no reason for expedited review is shown. Here we have an example of an unwise statute making direct review *prima facie* available, and an unwillingness by the Court to follow its own precedents by declining to pass on the Wisconsin statute before Wisconsin courts do so. We should remand this case with directions to the three-judge court to refrain from acting until the Wisconsin courts have acted.

MR. JUSTICE BLACK, with whom MR. JUSTICE BLACKMUN joins, dissenting.

I agree substantially with the dissent of THE CHIEF JUSTICE. I would vacate the District Court's judgment and remand with directions to withhold its proceedings to enable appellee to file a declaratory judgment or other state court action challenging the police chief's posting of notices in all Hartford retail liquor outlets forbidding sales or gifts of liquors to appellee for one year. As the

Court's opinion, the cases there cited, and THE CHIEF JUSTICE's dissent point out, such a course of action is justified "where the issue of state law is uncertain" and where the state court might confine the state law's meaning so "as not to have any constitutional infirmity." The Wisconsin Act appears on its face to grant authority to a man's wife, a mayor, a town's supervisors, the county s뭐    tendent of the poor, a sheriff, or a district attorney to post notices forbidding liquor establishments from giving or selling any alcoholic beverages to the person so posted. The effect of such sweeping powers, if there is nothing else in the State's law to limit them, is practically the same as that of an old common-law bill of attainder, against which our forebears had such an abhorrence that they forbade it in Art. I, § 9, of the Constitution. See, *e. g., United States* v. *Lovett,* 328 U. S. 303 (1946). And here the Wisconsin law purports on its face to place such arbitrary and tyrannical power in the hands of minor officers and others that these modern bills of attainder can be issued *ex parte,* without notice or hearing of any kind or character. It is impossible for me to believe that the Supreme Court of Wisconsin would uphold any such boundless power over the lives and liberties of its citizens. It seems to me therefore wholly uncertain that the state law has the meaning it purports to have, and I believe it is unfair to Wisconsin to permit its courts to be denied the opportunity of confining this law within its proper limits if it could be shown that there are other state law provisions that could provide such boundaries. For example, notice and hearing might be provided by principles of state administrative procedure law similar to the federal Administrative Procedure Act.

I realize that there are many cases where federal courts should not stay their hands to permit state courts to

interpret state law. Compare *Clay* v. *Sun Insurance Office,* 363 U. S. 207, 213–227 (1960) (BLACK, J., dissenting), with *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943). Here, however, no state court appears to have passed on this Act at all, and a state decision might well apply the body of other state law to require notice, hearing, and other necessary provisions to render the challenged Act constitutional.