Robert J. HOFFMAN

v.

Francis P. McNAMARA, John P. Hussey,
Richard M. Hannon, E.J. Kazaleh, Ste-
phen Kelly, and City of Willimantic.

Civ. No. B–82–391 (PCD).

United States District Court,
D. Connecticut.

March 27, 1986.

Stephen A. Finn, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., for plaintiff.

Anthony M. Guerrea, Stratford, Conn., for defendant McNamara.

Frank Rogers, Asst. Atty. Gen., Hartford, Conn., for defendants Hannon, Kazaleh and Kelly.

James E. Kernan, Keefe & Kernan, Waterbury, Conn., for defendants Hussey and City of Willimantic.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff claims relief under 42 U.S.C. § 1983 by reason of his dismissal from a police training course and the termination of his employment as a police officer of defendant City of Willimantic. All defendants have moved for summary judgment on the grounds that, as to all of plaintiff's claims, there are no issues of fact in dispute and that they are entitled to summary judgment as a matter of law. Plaintiff contests defendants' contentions on legal but not factual grounds and has himself moved for summary judgment. As will be set forth below, the motions of defendants and plaintiff will be granted in part and denied in part.

*Facts*

Plaintiff was appointed a probationary police officer in Willimantic, Connecticut, in March of 1980. All Willimantic police constitute a labor bargaining unit, represented by a union. At his appointment, plaintiff became a member of the bargaining unit and his employment rights were established· by the contract negotiated by the union with the City. *See* Contract of Employment (attached as exhibit in support of the motion for summary judgment of defendant City of Willimantic), Article I, Sections 1 and 2; Article III, Section 2. The contract provided that a probationary police officer could be terminated at any time within the probation period for any reason. *Id.* at Article VIII, Section 2. A grievance procedure with respect to disputes arising out of the contract was provided in the contract by Article VI.

By state law, each municipal police officer is required to complete a training course. Conn.Gen.Stat. § 7–294d. In May of 1980, plaintiff was assigned to a residential training course given at the Municipal Police Training Academy ("Academy"), completion of which would have met the statutory requirement. The Academy is conducted by the Connecticut Municipal Police Training Council ("Council"), which exists by virtue of the provisions of Conn.

Gen.Stat. §§ 7–294a—7–294e. Defendant Hannon was, in May 1980, the Executive Director of the Council; defendant Kelly was Director of Training; and defendant Kazaleh was an instructor. Defendants Hussey and McNamara were, respectively, the Chiefs of the Willimantic and Stratford Police Departments.

At the Academy, plaintiff was provided with a manual which set forth the rules for trainees. During the course, plaintiff was the subject of reports suggesting improper conduct with Carla Diaz, a fellow trainee, who had been assigned from the Stratford Police Department. Hannon ordered an investigation of the charges, which was conducted by Kazaleh under the supervision of Kelly. Interviews were conducted of a number of plaintiff's co-trainees. The information gleaned from various sources was to the effect that, on one or more occasions, plaintiff was known to be in Diaz' assigned dormitory room with the door closed, in the late evening or early morning hours. At such times, voices and/or noises consistent with sexual conduct were heard to emanate from the room. In all reported instances, the interviewees characterized the noises/voices as suggestive of sexual activity. Plaintiff and Diaz were interviewed and denied any impropriety. In affidavits filed in court, each has denied that any sexual conduct occurred. The reports were reviewed by Hannon, who determined that a violation of the Academy's rules had occurred on the basis that plaintiff and Diaz had engaged in sexual relations in Diaz' Academy room. Hannon determined to and did dismiss plaintiff and Diaz on that basis. There is no evidence in the record to suggest that the decision to dismiss plaintiff was made other than solely by Hannon. Plaintiff was interviewed after Hannon's decision had been reached. There was no formal hearing with respect to the charges.

At about the same time, two other trainees, male and female, who were observed in bed in the female's room, were also dismissed. A third pair of trainees, male and female, who were also reported to have

engaged in sexual intercourse, were not the subject of disciplinary action because their conduct did not occur at the Academy. Hannon did not receive first hand information in any of these cases from any source, including plaintiff.

Plaintiff was interviewed by defendants Hussey, Kelly, Kazaleh and a member of the Willimantic Police Department. He denied any misconduct. Based on the dismissal from the Academy, the failure of plaintiff to complete the training course and Hussey's belief that plaintiff had been untruthful in answering questions about his conduct (he allegedly denied being in Diaz' room alone with her), defendant Hussey informed plaintiff that there were only two alternatives: either plaintiff resign from the department, citing personal reasons if he wished, or he would be terminated by Hussey. Plaintiff chose to resign and executed a letter of resignation. Plaintiff claims that he did so under the duress of potential disclosure by Hussey of the reasons for his termination.

Defendant McNamara, as Chief of the Stratford Police Department, was made privy to the investigation which pertained both to plaintiff and Diaz because Diaz had been a member of the Stratford Police Department. McNamara expressed his view in a letter to Kelly that the situation warranted dismissal. Hannon emphatically stated that the decision to dismiss was his and he consulted and considered no one's opinion in making it.

*Discussion*

It is clear that, as a result of the interviews done by the investigative officers, Hannon was provided with evidence that plaintiff engaged in sexual conduct with Diaz. While the evidence was not conclusive, Hannon credited it.[1] Plaintiff was not present at the interviews of the witnesses whose testimony was adverse. He did give

his own version, but apparently his dismissal from the Academy had already been decided.

### I. *Due Process*

The first issue is whether plaintiff was deprived of a liberty or property interest without due process.

### A. *Liberty Interest*

Plaintiff claims the dismissal adversely affected his name and reputation and that this constitutes deprivation of a liberty interest. It must be remembered that Hannon is claimed to have done two things: (1) he dismissed plaintiff from the Academy, and (2) he caused defendant Hussey to be advised of the information which precipitated plaintiff's dismissal. Defendants Kazaleh and Kelly merely conducted the interviews and reported what they had been told. There is no claim by plaintiff that any of these three reported what was said by the interviewees other than accurately. Defendant McNamara expressed his opinion as to the action he considered appropriate against Diaz and determined that plaintiff should not remain as a member of the Willimantic Police Department. There is no suggestion that any of the defendants publicized the information from the interviews or the fact of plaintiff's dismissal from the Academy and his resignation, except among themselves in the course of their official duties.[2]

However, plaintiff has alleged, and supported by affidavit, that his name and reputation have been adversely affected and his job prospects diminished. He continues to deny the substance of the charges made against him and claims that he has been stigmatized as a result of his termination. "Where a person's good name, reputation, honor, or integrity is at stake be-

**1.** It is interesting to note that, while plaintiff protests the propriety of Hannon's finding, the plaintiff himself twice invokes mere accusations of sexual conduct (made by Diaz against Kazaleh) and asserts them as undisputed fact. *See* ¶¶ 9 and 11 of plaintiff's statement under Local Rule 9(c).

**2.** Defendant Hussey is alleged to have notified plaintiff's father, a fellow police chief, but there is nothing to suggest that the news had an adverse effect upon his relationship with his father.

cause of what the government is doing to him," *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), and, specifically, where "the State, in declining to re-employ [a worker] impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities," *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), then the fourteenth amendment due process clause requires "notice and an opportunity to be heard," *Constantineau,* 400 U.S. at 437, 91 S.Ct. at 510, wherein the employee has "an opportunity to refute the charge" and "to clear his name." *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12. In light of plaintiff's denial that he committed any sexual impropriety, his case comes within the rule of *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam), that "there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation."

■ The "liberty" which the fourteenth amendment protects is "broad indeed." *Roth,* 408 U.S. at 572, 92 S.Ct. at 2707. It embraces not only the right to be free of bodily intrusions or restraint, but the right "to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Myer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Inasmuch as discharged employees of the state have a liberty interest which is compromised when they are terminated under circumstances which affect their standing in the community and their future job prospects, plaintiff is entitled, even at this late date, to a hearing for the sole purpose of presenting his version of the facts and clearing his name and reputation.

## B. *Property Interest*

■ As *Roth* has taught, not every expectation, hope or anticipation has the quality creative of a right to which constitutional protection attaches. It is only when, by virtue of state law, a person has a legitimate claim of entitlement to employment that a constitutionally protected property right exists. 408 U.S. at 577, 92 S.Ct. at 2709. *See Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Connell v. Higginbotham,* 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971).

■ Plaintiff here was a probationary police officer. The job was subject to termination for "any reason" by the City. *See* Contract of Employment, Article VIII, Section 2. Further, his employment was forfeitable unless he completed the basic training program provided by the Council at the Academy. Conn.Gen.Stat. § 7–294e. Like the non-tenured college teacher in *Roth* and the probationary police officer in *Codd,* plaintiff "had no Fourteenth Amendment property interest in continued employment, [and] the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question." 429 U.S. at 628, 97 S.Ct. at 884. *See also Ratti v. Lopes,* Civil No. H–85–222(TEC) (D.Conn., June 3, 1985); *Nistri v. State of Connecticut,* Civil No. H–82–292(MJB) (D.Conn., Nov. 30, 1984); *Martingano v. Hannon,* Civil No. H–81–2(JAC) (D.Conn., Oct. 29, 1983).

## II. *Equal Protection*

■ Plaintiff asserts he was denied equal protection because he and Diaz were dismissed for engaging in sexual conduct in a dormitory room whereas another couple, who also had sexual relations but after school hours and off the Academy's premises, were not dismissed. However, there is a rational basis for treating differently those who threaten the decorum of the Academy by their conduct and those who do not. Moreover, the other couple found in bed in one of the dormitory rooms received the same punishment as plaintiff

and Diaz. No equal protection claim can lie based on these facts.

Plaintiff also cites the denial of his request for admission to the Academy while two of the other dismissed students were re-admitted as a further basis for his equal protection claim. The record does not support any disparity in plaintiff's treatment, particularly since the Academy provides a course for police officers and appointees and plaintiff is neither. Plaintiff has submitted no record to suggest than an application was made by him and denied by any particular defendant. Accordingly, there can be no equal protection claim found on this record.

### III. *Privacy*

■ While a right of privacy is not specified in the Constitution, "zones of privacy" have been recognized to limit governmental intrusion into individuals' lives. *See Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973). As in *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976), plaintiff's claim is far removed from any recognized category of privacy and the publication of the fact of his dismissal, termination and the basis therefor is not within any recognized zone of privacy. While engaging in sexual intercourse may arguably be afforded some constitutional protection, this is not merely a case of the right to engage, in private, in sexual intercourse. This case is about such conduct in a school dormitory bedroom where the rules, at least implicitly, forbade such. The justification for the rules is not here validly challenged and certainly the Council had the right to regulate student conduct in its dormitory. The restrictions on the use of the bedrooms could not be clearer and plaintiff's claim of vagueness for want of a specific prohibition of sexual intercourse is ingenuous.

■ None of the cases cited by plaintiff arose under facts similar to those in this case. Indeed, plaintiff's citations would support the claim of the students at the Academy who were not disciplined because their sexual conduct occurred outside the Academy. Yet plaintiff cites Hannon's failure to discipline them as a basis for his claim under the equal protection clause. As the Supreme Court in *Paul v. Davis* has declined to extend the right to privacy, so will this court so decline under the facts of plaintiff's alleged activity. *See Gonzales v. Leonard,* 497 F.Supp. 1058, 1072 (D.Conn.1980). The right to privacy does not protect an individual from information in the public record. *Bergman v. Stein,* 404 F.Supp. 287, 296 (S.D.N.Y.1975).

### IV. *Association*

■ Plaintiff relies on *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir.1983), to support his claim of a right to freedom of association. However, there are material differences between *Thorne* and the instant case. First, the female plaintiff in *Thorne* conducted her affair with a married police officer during off-duty hours and completely in private, whereas plaintiff here is alleged to have engaged in sexual conduct in a dormitory room at the Academy. Second, the plaintiff in *Thorne* was refused a job as a police officer in part because of her liaison with the married police officer, yet the City of El Segundo concluded that it had no authority to discipline the male officer involved. In the instant case, both the male and female participants were punished equally for their conduct, and the Academy regulations furnish ample legal justification for the action taken against them.

### V. *Motions for Summary Judgment*

#### A. *Defendant McNamara*

■ The discussions above with respect to plaintiff's claims of violation of his property right, rights of privacy and association and equal protection are dispositive of defendant McNamara's motion for summary judgment as to those claims. There is no showing that he was a factor in plaintiff's dismissal from the Academy nor in the decision to fire him if he did not resign from the police department. All McNamara is shown to have done is to write a

letter endorsing a dismissal from the Academy of both Diaz, in whom he had a legitimate interest, and plaintiff, with whom he had no actual relationship and no specific interest. His gratuitous expression of his view as to the disposition of plaintiff's case at the Academy played no part in the decision of defendant Hannon to dismiss plaintiff and is not shown to have been a part of defendant Hussey's decision to terminate his employment. Indeed, Hussey testified to the factors which prompted his view and made no reference to any consideration of McNamara's opinion, if he knew about it. As thus not involved in the action by which plaintiff was stigmatized, whether such be the dismissal or the termination of employment, defendant McNamara cannot be held liable for the deprivation of any liberty interest of plaintiff.

If plaintiff intended to preserve a pendent slander/libel claim against McNamara, he has not briefed it. McNamara's only statement constituted neither a publication of a fact nor a re-publication, but rather an expression of a view as to an administrative decision to be made by Hannon in relation to the Academy and on behalf of the Council. A libel or slander must be false to be actionable and one's view of appropriate disciplinary action is not classifiable as either true or false. Further, as all other claims are hereby resolved insofar as McNamara is concerned, pendent jurisdiction would not properly be retained over a libel or slander case. *Reilly v. Leonard,* 459 F.Supp. 291 (D.Conn.1978); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Defendant McNamara's motion for summary judgment must be granted in its entirety and plaintiff's motion for summary judgment as directed against McNamara must is denied.

### B. *Defendants Hannon, Kazaleh and Kelly*

The general analysis of plaintiff's claims of violations of his rights of equal protection, privacy and association, set forth

above, is dispositive of these claims, both as to these defendants' motions for summary judgment and plaintiff's motion for summary judgment directed against them. Plaintiff's asserted property interest is not alleged to have been violated by these defendants in relation to his employment termination, but rather by reason of his dismissal from the Academy. Plaintiff's Memorandum at 21–22. The Academy is created by Conn.Gen.Stat. § 7–294a. Its attendees are not selected from an at-large application process, but by application for openings from prospective police officers seeking to meet the requirements of Conn. Gen.Stat. § 7–294e. There is no provision in § 7–294a nor any of its sequelae which establishes any standards of behavior required of Academy students. Thus, attendance at the school is not subject to any precondition by which automatic dismissal might occur.

Plaintiff claims that as a publicly funded institution, he is entitled to due process, notice and a hearing before his right of attendance at the Academy can be terminated. It is uncontested that no hearing occurred before his dismissal by defendant Hannon. Plaintiff was interviewed, but the report thereof was made after Hannon had determined to dismiss plaintiff. Plaintiff was not accorded the opportunityto confront those interviewees who gave damaging information to the investigators, nor to have their testimony explained to him, nor to make a presentation on his own behalf to Hannon.

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a class action brought by high school students who had been summarily suspended, it was not the compulsory school attendance statute that created the property and liberty interests in a public school education found to qualify for protection under the United States Constitution. "Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has oc-

curred." *Id.* at 574, 95 S.Ct. at 736, citing *Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974) (Powell, J., concurring). This is not to suggest that standards of conduct may not be adopted and enforced, *id;* only that state officials must exercise their authority "consistently with constitutional safeguards." *Id.* The Court concluded that entitlement to a public education is both a property and liberty interest "protected by the Due Process Clause and ... may be taken away for misconduct [only by] adherence to the minimum procedures required by that clause." *Id.*

What is required by the due process clause? A student "must be given *some* kind of notice and afforded *some* kind of hearing." *Id.* 419 U.S. at 579, 95 S.Ct. at 738 (emphasis in original). Thus, notice of the misconduct charged, an explanation of the evidence against him, and an opportunity to be heard in his own defense would seem to be required. *Id.* at 581, 95 S.Ct. at 740. *Goss* and this case are to be considered in the context of problems of school administration and the attendant need to deal expeditiously with disciplinary matters to insure the smooth functioning of a school and to avoid the disruption of the education of other students. *Id.* at 582, 95 S.Ct. at 740. *See Wasson v. Throwbridge,* 382 F.2d 807, 812 (2d Cir.1967); *Hagopian v. Knowlton,* 470 F.2d 201 (2d Cir.1972).

Defendants would distinguish *Goss* because the students there were compelled by state law to attend school, which is not the case with plaintiff. Such argument is without merit because the students in *Goss,* as well as plaintiff, claimed a property interest in what the state made available to them: an educational process. The nature and quality of that process is not dependent upon the compulsory school attendance law. In seeking to distinguish plaintiff's other authorities, defendants are correct—the facts are different from plaintiff's case but both *Wasson* and *Hagopian* assumed a protectible interest and went on to deal with whether the procedures used in taking action against the respective plaintiffs complied with due process. Since due process

is required only when a constitutionally protected interest is shown, *Wasson* and *Hagopain* both support plaintiff's claim. Defendants cite no contrary authority. Neither *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405; *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); nor *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, contradict a finding here of a liberty interest.

■ Defendants Kazaleh and Kelly merely performed the investigation. They had no role in deciding what procedure should be followed nor what form of discipline should be taken against plaintiff. Thus, they had no role in any denial of due process. There is no claim that they reported falsely the interviews conducted. The same consideration as to a claim of libel/slander as discussed above in relation to defendant McNamara pertains equally to these defendants.

Accordingly, the motions of defendants Hannon, Kazaleh and Kelly for summary judgment are granted as to plaintiff's claims of violations of his rights of privacy, association and to equal protection. Defendant Hannon's motion is denied as to plaintiff's claims of due process. The motions of defendants Kelly and Kazaleh are granted with respect to plaintiff's due process claims. Plaintiff's claims of libel/slander are dismissed as to all three defendants. Plaintiff's motion for summary judgment is denied as to his claims of privacy, association and equal protection as to all three defendants and denied as to his claims of due process violations as against Kelly and Kazaleh, but granted as against defendant Hannon as to plaintiff's claims of due process.

### C. *Defendants Hussey and City of Willimantic*

To the extent that plaintiff had no property interest in continued employment by the City of Willimantic, its motion, and that

of defendant Hussey, must be granted. For the same reasons set forth above, these defendants' motions with respect to plaintiff's claims of violation of his rights of privacy, association and to equal protection are granted. Defendants' motion cannot be granted, however, as to the assertion of due process in relation to a liberty interest for the reasons discussed above.

These defendants have pleaded the availability of the contract provision for a grievance procedure. Although this would be a post-action process, unless plaintiff filed his grievance before his termination and obtained a stay, a speculative course of action, such a process would not suffice as due process for the termination of a liberty interest as discussed below. As there is no property interest, plaintiff would not be able to seek reinstatement or compensation for his job loss. Rather, the purpose of the hearing to which he would be entitled would be "an opportunity to clear his name" and "to refute the charge." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. The hearing process provided in the contract pertains to "any controversy, complaint, misunderstanding or dispute concerning the interpretation or application of any provision of his agreement." Contract at 4. As no property interest is here involved, any matter which plaintiff could raise in the grievance/arbitration process would only pertain to his contract employment rights. His liberty right would thus not be reached and would not be a basis for a claim in the arbitration/grievance procedure. Thus, it is not an answer to plaintiff's claim for the kind of hearing which attaches to his liberty interest that such might be heard in the grievance/arbitration proceeding provided by the contract.

■ These defendants also rely on a claim of good faith, citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Johnson v. Anderson,* 420 F.Supp. 845 (D.Del.1976); *Manfredonia v. Barry,* 401 F.Supp. 762 (E.D.N.Y.1975). Good faith immunity is the right to rely on the state of the law known at the time of the conduct in question. One acting with malice, intending harm, cannot act in good faith, but no such charge is made here. Immunity is afforded by reason of a good faith belief formed at the time. *Scheuer,* 416 U.S. at 247–48, 94 S.Ct. at 1692. Absolute immunity was rejected by the Supreme Court "since it would not sufficiently increase the ability of ... officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for ... intentional or otherwise inexcusable deprivations." *Wood,* 420 U.S. at 320, 95 S.Ct. at 1000. The standard for determining whether an official acts in "good faith" is partly subjective and partly objective

> The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice.

*Id.* at 321, 95 S.Ct. at 1000. Although an official is not "charged with predicting the future course of constitutional law," *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967), he will be held liable under § 1983 "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [those] affected." *Wood,* 420 U.S. at 322, 95 S.Ct. at 1001.

■ Thus, the question here is whether these defendants reasonably should have known that their actions taken against plaintiff would violate a liberty interest protected by the Constitution. This question in turn depends upon the state of the law at the time they acted in July 1980. If the law "clearly established" plaintiff's liberty interest as of that date, the right of due process would require a hearing as decreed in *Roth.* As the analysis of the liberty right, above, demonstrates, the cases found to establish a liberty interest

under circumstances similar to those here were all decided well prior to 1980: *Roth* in 1972, *Myer* in 1923, and *Paul* in 1976. Inasmuch as defendants had access to municipal counsel, they reasonably should have known their acts would violate plaintiff's constitutional right to liberty.

Defendants are not excused from liability because they purported to rely on the state statute which precludes a police appointment absent graduation from the Academy and on the contract provision which permits probationary police officers to be discharged at will. While these factors would be pertinent to a good faith defense on the question of whether a property interest existed under the federal Constitution (since it is state law that creates such interest), it is irrelevant to a liberty interest, the nature of which is not dependent upon state law.

Accordingly, these defendants' claims of a good faith immunity neither avail them as movants for summary judgment nor in defending against plaintiff's motion for summary judgment.

 There remains the question of whether plaintiff's resignation concludes his claim. Plaintiff claims that he was constructively fired, that although he chose to resign he did so in the face of threats by defendant Hussey that he would be fired and the reason for his firing made public. Plaintiff contends that those circumstances left him with no choice but to accept the course of action forced upon him by Hussey. Defendants have not controverted plaintiff's factual claims concerning the circumstances of his termination.

Plaintiff's situation does not fit the pattern of constructive discharge cases. In those cases, employers are charged with creating such intolerable working conditions that the employee is forced to quit as an alternative to ceasing protected activities. *See, e.g., J.P. Stevens & Co. v. NLRB,* 461 F.2d 490 (4th Cir.1972) (employee harassed for engaging in union activi-

ties). Here, defendants had a right under the employment contract to fire plaintiff for any reason and, under state law, for failing to complete the training course at the Academy. No legal wrong would have been committed if the reasons for the termination had been made public. Thus, plaintiff was not faced with continuing employment on unlawful terms, but with resigning to avoid a lawful discharge. Under these precise circumstances, even if plaintiff's resignation could be characterized as a constructive discharge, he would have no valid claim against defendants resulting from his termination.

The claim of slander against the defendant Hussey is not briefed nor claimed by plaintiff in his memorandum. It is dismissed as a pendent claim, at best, as discussed above with respect to defendant McNamara.

### Summary

1. All defendants' motions for summary judgment are granted with respect to plaintiff's claims of a right to privacy, to associate and to equal protection.

2. The motions of defendants McNamara, Kazaleh and Kelly with respect to plaintiff's claims of a right to due process are granted.

3. The motions of defendants Hussey and the City of Willimantic with respect to plaintiff's claim of due process related to an alleged property interest are granted.

4. The motions of defendants Hussey and the City of Willimantic with respect to plaintiff's claim of due process related to a liberty interest are denied.

5. The motion of defendant Hannon with respect to plaintiff's claim of a right to due process is denied.

6. Plaintiff's motion for summary judgment with respect to his claim against all defendants of a right to privacy, to association and to equal protection is denied.

7. Plaintiff's motion for summary judgment with respect to his claim against de-

fendants McNamara, Kazaleh and Kelly of a right to due process is denied.

8. Plaintiff's motion for summary judgment with respect to his claim against defendants Hussey and City of Willimantic of a right to due process in relation to a property interest is denied.

9. Plaintiff's motion for summary judgment with respect to his claim against defendants Hussey and City of Willimantic of a right to due process in relation to a liberty interest is granted.

10. Plaintiff's motion for summary judgment with respect to his claim against defendant Hannon of due process is granted.

11. Plaintiff's claims of libel and slander are dismissed.

To implement the foregoing determinations and provide plaintiff with the relief to which he is entitled:

A. Defendants Hussey and the City of Willimantic shall, within sixty (60) days hereof, provide plaintiff with notice and a hearing pertaining to his liberty interest, not inconsistent herewith.

B. Defendant Hannon shall, within sixty (60) days hereof, provide plaintiff with notice and a hearing in accordance with his right to due process related to his attendance at the Academy, not inconsistent herewith.

C. Plaintiff shall submit to Clerk of the Court, with copies to counsel for all defendants, a proposed judgment to effectuate the terms hereof, within two (2) weeks hereof.

D. Each defendant shall have the right to comment to the Clerk of the Court on the proposed form of judgment, within two (2) weeks of plaintiff's submission of a proposed form of judgment.

E. The Clerk shall enter judgment after review of the form of judgment submitted by plaintiff and any comments received thereon within fourteen (14) days thereof from defendants.

SO ORDERED.