George M. FUSCO, Jr.

v.

Nicholas M. MOTTO, Commandant of
the Connecticut Veterans Home
and Hospital & Lester J. Forst,
Commissioner of Public Safety.

Civ. No. H–85–150.

United States District Court,
D. Connecticut.

Dec. 23, 1986.

Robert A. Ziegler and Edward T. Lynch, Jr., New Britain, Conn., for plaintiff.

Richard J. Lynch, Asst. Atty. Gen., Hartford, Conn., for defendant Motto.

Frank Rogers, Asst. Atty. Gen., Hartford, Conn., for defendant Forst.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### Procedural Posture

Plaintiff brought this action against defendant Nicholas Motto, Commandant of the Veterans Home and Hospital[1] ("Home") and Lester J. Forst, Commissioner of Public Safety, alleging that acting individually and in a conspiracy under color of state law they deprived plaintiff of the rights and privileges afforded him by the United States and Connecticut Constitutions when they dismissed him from his position as an agency police officer at the Home. Plaintiff now moves for summary judgment on the claim that defendants' actions constitute a violation of 42 U.S.C. § 1983 and a denial of his rights of due process. He seeks declaratory and injunctive relief, compensatory and punitive damages.

### Facts

The following factual scenario is not disputed: On or about August 30, 1977, plaintiff received a certificate of appointment as a special policeman and was vested with the corresponding police power under Conn.Gen.Stat. § 29–18. From that date until July 1981, plaintiff was employed as an agency police officer at the Home. He was dismissed from that position on July 7, 1981, allegedly because the Veterans Home Commission believed that he had exercised poor judgment in the treatment of a resident. The dismissal was later overturned by an arbitrator's award as lacking just cause and plaintiff was reinstated on April 19, 1982. The Veterans Home Commission unsuccessfully moved to have the award vacated in Superior Court. Plaintiff returned to work from 1982–1984 as an agency police officer and received good service ratings for his job performance until his dismissal in 1984.

Plaintiff was again dismissed in 1984 for what defendants claim were non-disciplinary reasons. Defendants claim that when plaintiff's employment was terminated in 1981, his police powers under Conn.Gen. Stat. § 29–18 were also terminated. Upon his reinstatement, defendant Motto nominated plaintiff to be granted the police powers afforded under § 29–18. This application was apparently acknowledged by the state police on August 30, 1982. The application was denied on July 11, 1984. Because, as a result of this denial by defendant Forst, plaintiff was deemed not to have the required status for his employment, defendant Motto terminated plaintiff's employment on August 13, 1984. Plaintiff was given one month's notice before termination. He was provided no hearing to contest either the denial of his application or his dismissal.

### Discussion

Plaintiff claims that he had both a property interest in retaining his appointment under § 29–18, because it was integrally related to his employment as an agency police officer, and a liberty interest in retaining the appointment since the denial of such power necessarily impugned his good name, reputation, integrity and ability to seek related government employment. The termination of such appointment and the termination of his employment are alleged to have been accomplished without a hearing and constitute a denial of his due process rights. This presents two questions:

(1) Did plaintiff have a property and/or liberty interest?

(2) Was he deprived of such interest without due process?

---

**1.** Defendant Motto claims that he should be dismissed from this action by virtue of Conn. Gen.Stat. § 27–104a(a) and (b), which provides that any civil action brought against the Veterans Home or its staff shall be brought against the Veterans Home and Hospital Commission in its official capacity. Neither members of the commission nor staff members of the Veterans Home can be held personally liable. *In Minotti v. Lensink*, 798 F.2d 607, 609–11 (2d. Cir.1986), the court considered an analagous Connecticut statute and held that such did not constitute a waiver of the state's sovereign immunity. The dismissal of Defendant Motto and subsequent substitution of the Commission would allow this action to be subject to a further motion to dismiss. Such action is unwarranted. § 27–104a does not and cannot provide Defendant Motto with absolute immunity from suit. *Id.* at 609.

I.

A. *Liberty Interest*

In *Hoffman v. McNamara*, 630 F.Supp. 1257 (D.Conn.1986), plaintiff was dismissed from a police training academy. As a result of this dismissal, his probationary employment with the Willimantic Police Department was also terminated, since, among other reasons, a prerequisite for his police appointment was successful completion of the training course. In consideration of his liberty interest, the court ruled:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 [91 S.Ct. 507, 510, 27 L.Ed.2d 515] (1971), and, specifically, where "the state, in declining to re-employ [a worker] impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities," *Board of Regents v. Roth*, 408 U.S. 564, 573 [92 S.Ct. 2701, 2707, 33 L.Ed.2d 548] (1972), then the fourteenth amendment due process clause requires "notice and an opportunity to be heard," *Constantineau*, 400 U.S. at 437, [91 S.Ct. at 510] wherein the employee has "an opportunity to refute the charge" and "to clear his name." *Roth*, 408 U.S. at 573 n. 12 [92 S.Ct. at 2707 n. 12]

*Hoffman*, 630 F.Supp. at 1260–61.

■ Defendants argue that plaintiff has no liberty interest because his dismissal did not affect his ability to seek employment elsewhere.[2] Defendant Forst's Memorandum at 9, citing *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708. This case is unlike the facts presented in *Roth*. The deprivation of plaintiff's police powers and his subsequent dismissal would necessarily require an explanation in any application for similar government and perhaps other employment. In *Roth*, the university had done nothing to preclude Roth from seeking other government employment in state universities. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. Here, the denial of police power under § 29–18 is a blemish on plaintiff's resume, likely to place him in a negative light with other law enforcement agencies. Although publicly no charges were made against plaintiff in the process of considering his status under § 29–18, such is implicit in the actions taken against him.

B. *Property Interest*

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ....'" *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Plaintiff was a classified employee who had achieved permanent status under Conn.Gen.Stat. § 5–196. As such, he could only be dismissed for just cause as the law requires that the dismissal of a state employee, who has achieved permanent status, be related to his ability to efficiently perform his job. Conn.Gen.Stat. § 5–240(c). *See, also, Wagner v. Connecticut Personnel Appeal Board*, 170 Conn. 668, 672, 368 A.2d 20 (1976) ("Under ... § 5–240(c) ... an employee cannot be dismissed arbitrarily or without reasonable cause.").

Defendants argue that plaintiff had no legitimate claim to continued employment, since he lost his police powers when he was dismissed in 1981 and, therefore, could have no claim in something he did not have. Moreover, they argue that defendant Motto's dismissal of plaintiff was a routine, non-disciplinary action mandated by the job classification requirement that an agency police officer possess § 29–18 police powers. It is furthermore argued that the dismissal, allegedly for non-disciplinary reasons, was a management prerogative and, under the collective bargaining agreement,[3] did not require a hearing to determine a just cause basis.

---

2. Defendants' briefs will be considered together.

3. The collective bargaining agreement has not been made a part of the record. Defendants'

representations of its contents are assumed to be accurate.

■ Defendants' arguments lack merit. Plaintiff did not lose his police powers in 1981. It is undisputed that after his dismissal on April 19, 1982, the Arbitrator ordered that plaintiff be reinstated as an agency police officer. This reinstatement was accomplished without any formal action with respect to the § 29–18 police powers previously granted to plaintiff in 1977. These powers were thus neither formally terminated in 1981 nor formally restored in 1982. His retention of those powers was assumed by the arbitrator and they were exercised without challenge until 1984. Accordingly, Forst's decision in 1984 was not whether to grant § 29–18 police powers to plaintiff, but whether the § 29–18 powers plaintiff already possessed, and had been exercising without prior termination, should be revoked.[4] As thus viewed, plaintiff's entitlement to, and expectation of, continued employment as an agency police officer is necessarily interrelated to and interdependent with his retention of the § 29–18 police powers. That was established when he was appointed an agency policeman in 1977 and was granted the requisite powers necessary to perform that job. When he was reinstated as a result of the arbitration decision, he resumed the exercise of the § 29–18 powers, which had laid dormant during the consideration of his dismissal, and continued to exercise those powers for the two years following his reinstatement. Thus, although the § 29–18 powers are not explicitly subject to the requirement that the revocation of such powers be based on good cause, and may not be so subject in other circumstances, such is the case here where the possession of such powers is a prerequisite to plaintiff's employment as an agency police officer—a position from which he could only be terminated for just cause. By implication, plaintiff's § 29–18 police powers can only be revoked according to the standards established under Conn.Gen.Stat. § 5–240. To hold otherwise would emasculate the protections afforded by § 5–240 and would, moreover, vitiate the arbitration award.

4. Given this analysis, defendants' argument that plaintiff is really seeking to contest the 1981 revocation of his § 29–18 police powers, which

## II.

### *Due Process*

■ As both property and liberty interests are at stake, the question becomes, what process is due? *Loudermill,* 105 S.Ct. at 1493. Here, two phases must be analyzed. First, there is the decision by Forst to revoke plaintiff's § 29–18 police powers. Conn.Gen.Stat. § 29–18, provides:

> The commissioner of public safety may appoint one or more persons nominated by the administrative authority of any state buildings or lands including, but not limited to, state owned and managed housing facilities, to act as special policemen in such buildings and upon such lands. Each such special policeman shall be sworn and may arrest and present before a competent authority any person for any offense committed within his precinct.

No regulations have been promulgated and no case decisions guide the commissioner's decision. Defendants argue for unlimited discretion citing the application provision that special policemen serve at "the pleasure of the commission", no authority for which is cited. Defendants appear to rely on the plurality decision in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). There, three justices held that "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, an [employee] ... must take the bitter with the sweet." *Id.* at 153–54, 94 S.Ct. at 1643–44. The "bitter with the sweet" approach never captured the full approval of the Court and, in fact, the Court has most recently refuted the notion.

> [I]t is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee.... The point is straightforward: the Due Process Clause provides that certain substantive rights —life, liberty, and property—cannot be deprived except pursuant to constitution-

action would thus be barred by the statute of limitations, is without merit.

ally adequate procedures. The categories of substance and procedure are distinct .... "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.

*Loudermill,* 105 S.Ct. at 1493, quoting in part, *Arnett,* 416 U.S. at 167, 94 S.Ct. at 1650 (Powell, J., concurring in part; concurring in result in part). This decision is a narrow one. Where police powers are a prerequisite to employment as an agency police officer, such powers may not be revoked as to one who has been granted those powers and appointed to the position, without providing that employee with due process.

■ Defendants do not seriously contend that plaintiff was provided either with notice or a hearing. Nevertheless, defendants argue that the court should not substitute its judgment for that of those such as the defendants who are vested with the authority to make such decisions. *Madow v. Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). A court may not ignore the dictates of due process and blindly defer to the decisions of agency heads. "[I]f ... [administrative] agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *Morgan v. United States,* 304 U.S. 1, 22, 58 S.Ct. 773, 778, 82 L.Ed. 1129 (1938). Forst does not deny that his revocation of plaintiff's § 29–18 powers in 1984 was based on the same facts on which plaintiff's dismissal in 1981 was based. Whether these facts would be sufficient for such a revocation, is not now a matter of judicial concern. What is important, however, is that Forst made his decision without providing plaintiff with notice and an opportunity to be heard to which he was entitled. *Loudermill,* 105 S.Ct. at 1495. This "right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Hart Twin Volvo Corp. v. Commissioner of Motor Vehicles,* 165 Conn. 42, 45, 327 A.2d 588 (1973), quoting *Morgan,* 304 U.S. 18–19, 58 S.Ct. at 776. Indeed, such right is also arguably embodied in Conn.Gen.Stat. § 4–182(c), wherein an agency is required to provide notice and a hearing before a license (defined, in part, as a "certificate, approval ... or similar form of permission required by law ...." Conn.Gen.Stat. § 4–166) is revoked.

■ Second, the dismissal of plaintiff from his position as an agency police officer, solely on the basis of the revocation of his § 29–18 powers, must also be considered. Defendant Motto claims the dismissal was a management perogative as a nondisciplinary decision which did not require a "just cause" determination.[5] Motto's decision was based on Forst's revocation of plaintiff's police power which was in turn based on facts which were conceded in 1981 to be disciplinary. It is impossible to segregate one or several steps in this chain of events and analyze each step in a vacuum. Motto's original decision was indisputably disciplinary in nature. Since these facts were the same ones on which Forst rested his decision, and which Motto, in turn, relied on, the dismissal cannot stand since such decisions were made without affording plaintiff the due process.[6]

5. The parties have not provided the court with a record of the collective bargaining agreement nor set out the definition of a non-disciplinary reason.

6. Had Forst's decision been one wherein due process had been provided plaintiff, then Motto may have had the right to thereafter dismiss plaintiff for not possessing the necessary qualifications for performing his job. But, since Forst's decision was constitutionally unlawful, Motto could not rely on it.

Accordingly, plaintiff's motion for summary judgment on the issue of defendants' liability for denying plaintiff due process is granted. As plaintiff could not be removed without due process, he shall be reinstated as an agency police officer at the Home effective as of his termination date in 1984. The issue of damages remains one for trial.

SO ORDERED.